The State v. Bittick.

THE STATE v. BITTICK, *Appellant.*

DIVISION TWO.

1.  **Marriage Ceremony** : COMMON LAW: STATUTORY REQUIREMENTS. A marriage according to the common law, though not in conformity to the statute, was valid in this state prior to the passage of the

The State v. Bittick.

act of the legislature of 1881 (Laws, p. 162) requiring a marriage license before anyone authorized by statute could perform the ceremony.

2. ———: COMMON-LAW MARRIAGE: STATUTE. A common-law marriage is valid under statutes regulating the marriage ceremony, though not solemnized in accordance with the statutory requirements, unless such statutes expressly declare them void if not solemnized in conformity with their provisions.

3. ———: ———: ACT OF 1881 REQUIRING LICENSE. The foregoing rules have not been changed by the provisions of the act of the legislature of 1881 (Laws, p. 162), requiring a marriage license before anyone authorized by statute can perform the ceremony.

4. Criminal Law: CONCUBINAGE: MARRIAGE. Where defendant and a girl under eighteen years of age, whose mother refuses to consent to her marriage, and who for that reason cannot procure a license to marry, in the presence of witnesses mutually agree to marry and publicly make themselves known as man and wife and execute a written instrument with witnesses, in which they enter into a solemn vow to live together as man and wife and such agreement is followed by cohabitation and holding themselves out to the world as man and wife, it is a valid marriage, and defendant cannot be legally convicted of taking away a girl under eighteen years of age for the purpose of concubinage.

5. Marriage, Definition of. Marriage is the civil status of one man and one woman, capable of contracting, united by contract and mutual consent for life for the discharge to each and to the community of the duties legally incumbent on those whose association is founded on the distinction of sex.

6. ———: AGE OF CONSENT AT COMMON LAW. At common law a male of fourteen years of age and a female of twelve years of age were capable of entering into a contract of marriage.

*Appeal from Callaway Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED.

*Boulware & Finley* for appellant.

(1) The parties to the marriage, being of competent ages—the female over twelve, and the male over fourteen, and having, in the presence of a large number

of witnesses, agreed to become man and wife, cohabited as such, held themselves out to the world as man and wife, and were so known and recognized, are, and were, in law, legally married, and such marriage was, and is, legal and valid. *Dyer v. Brannock*, 66 Mo. 391; Milton's Paradise Lost; Bracton, b. 1, p. 4, ch. 5, sec. 17; Swinburne on Espousals, p. 198; Taylor, Civil Law, 5, 6, 7, 223, 224, 226, 227, 234; 1 Minor's Institutes, pp. 230–238; *Jewell v. Jewell*, 1 Howard (U. S. Reports) p. 219, and authorities cited; *Jackson v. Claw*, 18 Johnson (N. Y.) 345. (2) Marriage between infants (male, fourteen, and female, twelve) is valid without the consent of their parents or guardians, notwithstanding the statute which prohibits magistrates or ministers, under a penalty, from solemnizing the marriage of a female under age of eighteen and male under age of twenty-one, without consent of parent or guardian. A marriage valid at common law is valid under the statute, unless the statute contains express words of nullity. *Meister v. Moore*, 96 U. S. 78; 12 Va. Law Jour. 1–13 (1888 cases); 1 Bishop on Marriage & Divorce, sec. 283; *Ferrie v. Dulax*, 3 Bradf. 151; *Cargile v. Wood*, 63 Mo. 501; *Parton v. Hervey*, 1 Gray, 119; *Carmichael v. State*, 12 Ohio St. 553; Schouler's Dom. Rel. [2 Ed.] pp. 22–4; 2 Greenl. Ev. [4 Ed.] sec. 460, and the authorities cited; *Parker v. Baron*, 20 Ga. 702; *Arkon v. Desprei*, 30 Ga. 173; Kent's Com. [7 Ed.] side p. 91, top p. 58; *Wyckoff v. Boggs*, 2 Halstead Rep. 138; *Roche v. Washington*, 19 Md. 53; *Sigonia v. Buxton*, 2 Greenl. R. 102; *Milford v. Worcester*, 7 Mass. 48; *Ellis v. Hull*, 2 Aik. (Vt.) 41; 6 Halstead, (N. J.) 20; 2 N. H. 263; 3 A. K. Marshall, 370; 6 Sergeant & Rawle, 333; 2 Carran (Phillips) 354, and authorities cited; 1 Starkie's Rep. 405; 2 Starkie on Evidence, 590–680. (3) Marriage is nothing but a contract, and to render it valid it is only necessary upon the principles of natural law that the parties should be

able to contract ( the female, twelve, and the male, four-teen years of age,) willing to contract, and should actually contract. A marriage thus made was by the common law deemed valid for all purposes. Anderson's Law Dictionary, p. 660, and authorities cited; *Com. v. Stump*, 53 Penn. R. 132; 1 Blackstone's Com., p. 434; 2 Blackstone's Com. 202; 10 Kentucky, p. 370, and authorities cited; *Dumanes v. Fishly*, 3 A. 79. (4) The consent of parties, without any particular forms or ceremonies, is all that is required to render the marriage legal and valid. Reeve's Domestic Relations, p. 307, and note. (5) Various statutes have been enacted to guard against abuse of the marriage ceremony. Such of them as require license, or publication of banns, or consent of parents, are regarded as directory; and unless explicitly declaring the marriage to be void, if not complied with, do not render it void. 2 Bouvier's Law Dictionary, p. 106; 4 Iowa, 449; 26 Mo. 260; 2 Watts ( Penn.) 9; 1 Howard ( U. S.) 219; 2 Halstead ( N. J.) 138; 2 N. H. 268. The statutes of this state do not prohibit such marriages, nor declare them null and void. R. S. 1889, secs. 6840, 6841, 6842, 6843, 6844. (6) Although the statute requires the parties to be of certain age and the marriage to be celebrated by a minister or judicial officer, and with the consent of the parent or guardian, and inflicts a penalty on those who disobey these regulations; yet, if the marriage be made according to the common law without observing any of these statute regulations, it would still be a valid marriage. Authorities, *supra*. (7) A marriage valid at common law is valid under a statute, unless the statute contains express words of nullity. *Meister v. Moore*, 96 U. S. 78: 12 Va. Law Journal, 1–13. (8) The marriage in this case was by parties ( the female over sixteen years, the male over twenty-one years) fully competent under the common law to make a contract of marriage. The agreement was made in presence of a

number of witnesses. It was reduced to writing, subscribed by the contracting parties, attested by a number of witnesses and duly recorded in the proper office. In pursuance of said agreement and contract they cohabited as man and wife, and were known and recognized by the public as such. This was a legal and valid marriage.

*John M. Wood*, Attorney General, for the State.

THOMAS, J.—The defendant was indicted and convicted in the Callaway circuit court for taking away Bertha A. L. Bice, a female under eighteen years of age, from Sarah Rhine, her mother, who had the legal charge of her, for the purpose of concubinage, and was sentenced to imprisonment in the penitentiary for a term of two years. From this sentence he has taken his appeal to this court. The record shows that the defendant was a widower, with six children, and according to the finding of the jury Bertha A. L. Bice was under eighteen years of age. She lived with her mother, who was a widow.

The mother testified that the girl was about sixteen years old. The girl worked at defendant's, and it seems fell in love with him, and she and he desired to marry, but, the mother refusing to give her consent, they were unable to obtain a marriage license. Determined, however, not to be thwarted in their designs and wishes, they got together, and F. L. Minor testified as to what then occurred as follows: "Know Mrs. Rhine and Bertie Bittick, the wife of defendant. Bertie and defendant were married at my house about the sixteenth of last April; were married publicly, in the presence of over twenty persons. They married themselves. There was no minister or officer present. They stood up in the parlor floor and mutually agreed and promised to marry each other. They publicly made known

themselves as man and wife; lived, cohabited and held themselves out to the world as man and wife. They were known and recognized by the public as man and wife. They, at the time of said marriage signed and executed a written marriage contract, which was attested by myself and a number of others.

Witness identified the following contract as made by the parties, and witnessed by him and others:

"MARRIAGE CONTRACT.

"We, Hiram J. Bittick and Bertie A. L. Bice, enter into a solemn vow to live together so long as we may both live, to live together as man and wife, in the presence of our God and the undersigned witnesses, at the residence of F. L. Minor, in Cote Sans Dessein township, county of Callaway, state of Missouri, on this sixteenth day of April 1890.        H. J. BITTICK,

"BERTHA A. L. BICE.

"Witnesses:

| "F. L. MINOR, | AGNES BITTICK, |
| "W. A. JOHNSON, | OLIVIA RIEFSTIECK, |
| "FANNIE A. JOHNSON, | ROSE RIEFSTIECK, |
| "JANE T. MINOR, | WILLIAM RIEFSTIECK, |
| "HERBERT JOHNSON." | |

"The above and foregoing instrument of writing was filed for record, April 29, 1890, at 10:20 A. M., and duly recorded.        GEORGE W. PENN,

"By P. B. BAILEY,        Recorder.

"Deputy Recorder."

This is a sufficient statement of the facts of this case, to present the points involved.

Upon the facts thus given, the court gave *ten* instructions at the instance of the state and *seventeen* at the instance of defendant, and yet defendant complains that the court did not *fully* instruct the jury. The view we have taken of the case renders it unnecessary to refer to the instructions specifically. Suffice to say that the court told the jury that the marriage ceremony

and contract as given here did not constitute a marriage and, therefore, that defendant could not escape the penalty of the statute under which he was indicted, on the ground that he had made Bertha his wife.   The defendant contends that this was error and that this ceremony and contract did constitute a valid marriage, and, therefore, that defendant and Bertha were after April 16, 1890, man and wife and had a right to cohabit together as such, and this is the point to be decided.

Owing to the importance of the question, involving as it does the best interests of society, and the preservation of the home and family, the basis of all good society, we gave it a very careful consideration.   This and kindred questions have been before the American and English courts so often and the subject has been so frequently and thoroughly discussed by the courts and text-writers, that we deem it unnecessary and even a profitless task to review the authorities again in this case.   Ever since 1805 we have had statutes in this state regulating the marriage ceremony and providing who might solemnize it.   These statutes remained in substance the same till 1881, when for the first time an act requiring a license to marry was passed.   Prior to this change, the question, as to whether the statutes of this state on the subject superseded the common law and rendered a marriage not in conformity with the statutory requirements void, was before this court in 1857, in *State v. McDonald*, 25 Mo. 176 ; in 1876 in *Cargile v. Wood*, 63 Mo. 501 ; in 1877, in *Dyer v. Brannock*, 66 Mo. 391 ; and again in 1883, in *State v. Gonce*, 79 Mo. 600.

Two propositions are conclusively settled in this state by the cases above cited :  *First.*   That prior to the adoption of the statute in 1881 requiring a marriage license before anyone authorized by the statute could perform the ceremony, a marriage according to the common law was valid in this state, though not in conformity to the statute.   *Second.*   In the interpretation

of statutes on the subject of marriage, a common-law marriage is good though not in conformity to the statutory requirements, *unless the statutes contain express words of nullity.* And we may add that this rule of interpretation has been adopted in nearly all the American states. See Stewart on Marriage and Divorce, sec. 53, where the authorities are collated and also 1 Bishop on Marriage and Divorce, sec. 283, as well as the cases cited in *Dyer v. Brannock, supra.*

These two propositions being settled even beyond debate, let us see if it was intended by the statute of 1881 to change or modify them or either of them.

The first section of this act ( Sess. Acts, 1881, p. 161 ) provides that, "Previous to any marriage in this state, a license for that purpose shall be obtained from the officer herein authorized to issue the same." The remaining provisions of the act are substantially as they had existed prior to its enactment, the changes made being such only as to make a statutory marriage conform to the theory of the license system. And the statute of 1881 was, in all essential particulars, in force in 1890, when defendant and Bertha were married as they claim. By other sections of this act, the officer authorized to issue marriage licenses was prohibited from issuing a license authorizing the marriage of any male under twenty-one, or female under the age of eighteen years except with the consent of his or her father, or if he is dead, etc., his or her mother, etc., and imposing penalties upon those who issue licenses or solemnize the marriage ceremony contrary to the statutory requirements. But there are no words in the act declaring a marriage not in conformity to the statute null and void. Hence, applying the rule of interpretation of marriage statutes given above to the statute in force on April 16, 1890, we see, that if the marriage of defendant and Bertha was good at common law it was not made null and void by the statute and is, therefore, valid.

The only question remaining, therefore, for us to determine is, did the contract in this case constitute a valid common-law marriage? We think it did. Our statute defines marriage thus: "Marriage is considered in law as a civil contract, to which the consent of the parties capable in law of contracting is essential." While it is here declared to be a civil contract, it is almost universally held to be something more than an ordinary contract. Marriage is a *status*, created by contract, and we formulate the definition of it as follows: *Marriage is the civil status of one man and one woman, capable of contracting, united by contract and mutual consent for life, for the discharge, to each other and to the community, of the duties legally incumbent on those whose association is founded on the distinction of sex.* The contract of marriage in this case comes up to every requirement of this definition. It created the relation of husband and wife between the defendant and Bertha, so long as they both should live. In form, then, the contract was good and constituted a valid marriage at common law. 1 Bish. Mar. & Div., secs. 2 and 3.

This relation between them is indissoluble except by death or decree of court. It is scarcely necessary for us to cite authorities that at common law a female of the age of twelve and a male of fourteen were capable of entering into a contract of marriage. 1 Bish. Mar. & Div., sec. 145. There is no question that the parties in this instance were capable of assuming the marital relation, by contract, at common law. The defendant having entered into a valid marriage with Bertha A. L. Bice and thus made her his wife, he is not guilty of the crime of taking her away from her mother for the purpose of concubinage.

We will add that we have come to this conclusion very reluctantly, for we feel that the best interests of men and women and children, of society, of the family, and the home require that parties should not "marry

themselves," and that all marriages should be entered into publicly before those authorized by law to solemnize them, and put upon the public records. But we are not here to make the law conform to what we think it *ought* to be, but to declare it as it is. As late as 1877, this court, after a full review of all the authorities, declared that a statute prescribing the formalities to be observed in the solemnization of marriage did not render marriages entered into according to the common law, but not in conformity to such formalities, void, unless the statute itself declared them null, and that this rule of interpretation had been the rule since 1857; and yet, when the statute of 1881 was enacted, the words of nullity of all marriages not in conformity to the statute were omitted. If the law-making power had desired to make common-law marriages void, all that was required was to add to the first section of the act of 1881 these words, " and all marriages entered into without a license shall be void." This was not done and hence we must conclusively presume that it was intended that that act should be interpreted by the rule then in force, as declared by this court. The legislature has the power to add these words at any time but this court has no such authority.

The judgment of the lower court is reversed, and defendant discharged. All concur.