ALBERT H. HEYMANN

*v.*

JENNIE HEYMANN.

*Opinion filed December 20, 1905.*

1. MARRIAGE—*what constitutes a good common law marriage.* Saying to a woman, "I give you my word of honor we can stay man and wife; I am your husband and I am satisfied," with an assurance, in answer to her expressed doubts, that no other ceremony was necessary, which conversation was followed by cohabitation, constitutes a vaild marriage at common law.

2. SAME—*evidence of marriage per verba de presenti strengthened by absence of prior illicit intercourse.* Evidence of a contract of marriage *per verba de presenti,* followed by cohabitation as husband and wife, is strengthened by the facts that there had been no previous illicit relations between the parties and that there was no lack of capacity upon the part of either to marry.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is a bill for separate maintenance, filed by appellee against appellant, who appeared and answered. A replication was filed to the answer, and upon a hearing of the cause the court entered a decree in favor of appellee, the complainant in the court below. Appellant took an appeal from the

decree, entered by the superior court of Cook county, to the Appellate Court for the First District. The Appellate Court has affirmed the decree, and the present appeal is prosecuted from such judgment of affirmance.

CHARLES L. SWANSON, (WILLIAM J. STAPLETON, of counsel,) for appellant.

D. B. BRILLOW, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In deciding this case the Appellate Court expressed the following views:

"Appellee contends in her bill and by her own testimony, supported by the testimony of several witnesses and a sworn schedule made by appellant, that there was a marriage contract between appellant and herself *per verba de presenti,* followed by cohabitation and living together as husband and wife for a period of six years. Appellant on the other hand denies any such contract. He denies any intimate relations with appellee, and claims that his presence in the same house or apartment with her was as a roomer or boarder.

"The issue here is whether the parties were married, no ceremony having been performed. Appellee avers in her bill that she was married to appellant in August, 1896, without a marriage ceremony. In her testimony appellee says that in April, 1896, appellant, having rented a furnished room of her for some time previous thereto, and being about to go to Lake Geneva, where he had an engagement as a musician, proposed marriage to her; that she postponed the matter until he should return from Lake Geneva; that he wrote to her from Lake Geneva repeatedly, and sent her money in letters to rent a flat, and requested her to give up keeping boarders. In accordance with his suggestions she rented a flat at the corner of Wood and Division streets in Chicago,

and moved into it; that appellant returned from Lake Geneva in August, 1896, and the subject of marriage was again talked over between them.   In the course of the conversation, and in answer to appellee's question as to the form of marriage in this country, appellant stated to her that it was not necessary to get married, conveying to her the impression apparently that no marriage ceremony was necessary.   He said to her: 'I give you my word of honor we can stay man and wife.   I am your husband, and I am satisfied.'   Appellee then said that they would have to go to a judge, and appellant replied that his word was better than a judge's word. Appellee stated that she knew what marriage was in the old country, but that she supposed what he said was true; that he promised her to be her husband, and she consented.   This was the substance of their conversation.   Thereupon they occupied the same bed that night, and lived together as husband and wife for six years until appellant left her.

"The testimony of appellee is supported by five or six witnesses, who testify to various facts and circumstances tending to show that appellant and appellee lived together as husband and wife, treated each other openly as husband and wife and spoke of each other as sustaining that relation, and that they were so regarded by those who knew them.

"Within a year after the time appellee claims the contract of marriage was made, a suit was commenced and a judgment was recovered therein against appellant and appellee in favor of A. Bernstein, before a justice of the peace of Cook county for $52.75, and costs.   An execution was issued thereon and placed in the hands of Phil C. Menard, a constable of Cook county, for service.   On June 18, 1897, appellant executed and made affidavit to a schedule, which was given to the constable holding the execution.   In this schedule he sets forth the household goods and wearing apparel of himself and Jennie Heymann, his wife, and calls appellee his wife several times, describing her as 'Jennie Heymann, *nee* Oney, his wife.'

"Appellant denies the conversations in regard to marriage, and that he lived with appellee as her husband at any time. He denies that he ever held her out or introduced her as his wife, and states that he never occupied the same room with her, and that his only relation with her at any time was as a roomer or boarder. In regard to the schedule, which he made to the constable, he says that appellee advised him to go to an attorney whom she had seen, and that he went with her to the office of Mr. Knaus, who advised him that the only way he could get out of paying an unjust debt was to sign the paper which was presented to him; that thereupon he signed it, stating to Knaus that appellee was not his wife, and that he did not know that he swore to her being his wife in the schedule." [Counsel for appellant admit, however, that sexual relations did exist between appellant and appellee, saying in their brief: "It may be urged by counsel for appellee that appellant has denied sexual relations with appellee. This is untrue. While it appears from his testimony that he denied occupying the same room and bed with her, the denial was in every instance coupled with the qualifying words, 'as husband and wife.' "]

"Appellant introduced the evidence of several witnesses who testified that they knew appellee during the period appellant was rooming with her as Mrs. or Miss Oney, and never heard appellant address her as his wife, and that appellant introduced her as Mrs. Oney. Two of the landlords of appellee testified that she rented premises of them, giving the name Mrs. Oney.

"On the evidence thus briefly outlined, appellee contends that there was a common law marriage, and appellant insists that there was no marriage, and that the evidence does not show a marriage.

"To enter into an analysis or full discussion of the evidence here would extend this opinion beyond reasonable limits. We have studied carefully the evidence contained in the record, and we think it preponderates in favor of the

contention of appellee that there was a marriage contract between appellant and appellee *per verba de presenti,* which was immediately followed by cohabitation as husband and wife. There is no question in the case of the capacity of the parties to enter into the marriage relation. Nor is there any contention that the parties were living in a meretricious state before August, 1896, the date of the marriage contract and the cohabitation that followed it. While appellant has denied substantially everything that appellee and nearly every witness on her behalf testified to, his evidence does not go to the extent of showing that they at any time lived together in clandestine sexual intimacy. No doubt, therefore, is thrown upon the marriage contract, as testified to by appellee, by reason of the contract having been entered into through the door of a previous illicit intercourse. The proof in this case brings it clearly within the law, as announced by our Supreme Court in *Cartwright* v. *McGown,* 121 Ill. 388, and the authorities there cited. In the above case it is said: 'While our statute prescribes certain formalities to be observed in marriages, and certain steps to be taken to preserve the evidence of their celebration, it does not declare a marriage void which is legal at the common law, merely because not entered into in accordance with its provisions. (*Port* v. *Port,* 70 Ill. 484). A marriage is a civil contract made in due form, by which a man and woman agree to take each other for husband and wife during their joint lives, unless it is annulled by law, and to discharge towards each other the duties imposed by law upon such relation. Each must be capable of assenting, and must in fact consent to form this new relation. If a statute forbids the solemnization of marriage without a license, still in the absence of a clause of nullity, the marriage will be good though no license was had.'

"No particular form of words is necessary to constitute a common law marriage. If what is done and said evidences an intention by the parties to assume the marriage status,

and the parties thereupon enter into the relation of husband and wife, that is sufficient, whatever may be the form of expression used. (Stewart on Marriage and Divorce, sec. 86).

"The clear preponderance and weight of the evidence show all the necessary legal elements of a marriage, as contemplated by the law of this State. This was the view and conclusion of the learned chancellor, who heard the witnesses and observed their character and manner of testifying. His conclusions upon the evidence are entitled to weight.

"The decree of the superior court accords with the law and the facts of the case, and must be affirmed."

We concur with the views above expressed in the opinion of the Appellate Court; and accordingly the judgment of the Appellate Court is affirmed.        *Judgment affirmed.*