OTTO B. HERALD *et al.* Plaintiffs in Error, *vs.* FREDERICK MOKER, Defendant in Error.

*Opinion filed December 17, 1912.*

1. MARRIAGE—*no particular form of words necessary to show a common law marriage.* To constitute a common law marriage prior to the passage of the act of 1905 no particular form of words is necessary, and it is sufficient if the evidence shows that the parties intended to, and did, assume the relation of husband and wife.

2. SAME—*what does not show that relation was meretricious.* Where a husband and wife are divorced after living together for thirty years but they subsequently become reconciled, and are living together as husband and wife prior to 1905 with the intention of continuing the marriage relation, the fact that no second marriage ceremony is proven does not show that the relation was meretricious nor defeat the homestead and dower rights of one after the death of the other.

. WRIT OF ERROR to the Circuit Court of DeKalb county; the Hon. DUANE J. CARNES, Judge, presiding.

C. G. FAXON, and JONES & ROGERS, for plaintiffs in error.

CLIFFE & CLIFFE, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a writ of error to the circuit court of DeKalb county to review a decree of that court assigning homestead and dower in certain real estate to defendant in error, as surviving husband of Anna Moker, deceased.

Frederick Moker and Anna Moker were married in 1872 and lived together until the latter part of 1903, when they were divorced. The last few years of that period they resided in DeKalb county. In 1900 Frederick Moker had executed a contract relinquishing all right to any of Anna Moker's property, waiving rights of homestead and dower, and agreeing to join in conveying any of her property on her request. The consideration specified in this

agreement was $1000. Apparently this was not paid at
the time, but shortly after the divorce Mrs. Moker sold a
piece of her real estate and gave defendant in error $1200
of the proceeds for what she said she was owing him. In
1904 mutual friends attempted to effect a reconciliation.
The two had a meeting in Sandwich, at the house of one
Brandenberger, in April of that year, and as a result agreed
to live together again. Defendant in error gave Mrs. Mo-
ker his pocket-book, containing several notes and a consid-
erable sum of money, she stating at the time that now she
had all her money back and they would get married again.
That night they slept in the same room and bed, in the
house where they formerly resided, then occupied by a ten-
ant, telling the tenant and his wife, before they retired,
that they were the same as married,—that they were going
to get married the next day. They left Sandwich the
next morning on a train, coming back the same evening,
when Mrs. Moker announced to the tenants, Mr. and Mrs.
Olson, that they were married. On Mr. Olson stating that
he did not see any announcement of the marriage in the
paper, Mrs. Moker replied, "We are married, anyhow."
No evidence was introduced showing that any marriage
ceremony was performed. Two of the plaintiffs in error,
Otto B. Herald and Waldo W. Herald, were children of
Mrs. Moker by a former marriage. By her marriage with
Frederick Moker she had one son, Paul F. Moker. At the
time of their reconciliation Moker was about sixty-nine
years of age and Mrs. Moker was about sixty-four. At
least seven witnesses testified that Mr. and Mrs. Moker
said after they went to live together, in 1904, that they
were married, several stating that the two were introduced,
in their presence, as man and wife, and were reputed as
married, from 1904 to her death, in the neighborhood
where they resided. Mrs. Moker told one witness that they
had gone to Dakota, after their reconciliation, to live but
did not like it there and were now going "to make a good

home and stay together until God separate us." About an equal number testified, on behalf of plaintiffs in error, to having heard statements from Mrs. Moker that Moker was only boarding with her, some stating that she took him back only because she was afraid of him. The testimony tends strongly to show that after they commenced living together again, in 1904, Mrs. Moker was the dominating power in the household. Mrs. Moker made a will in 1905 in which it was stated that she was unmarried. No explanation is given as to who drew this will or whether she understood its contents. She signed it by mark. By its terms her property was divided in various proportions among her three sons. The defendant in error testified, but neither on direct nor cross-examination was he asked whether any marriage ceremony had been performed between himself and Anna Moker after their reconciliation.

Plaintiffs in error contend that the relations of the Mokers after their reconciliation were meretricious, while the defendant in error claims that even if no ceremony was performed the acts of the parties showed that there was a common law marriage; that they had lived together before the enactment, in 1905, of the statute amending the law as to common law marriages.

The true relation of a man and woman living together is always a matter of evidence. (*Hebblethwaite* v. *Hepworth,* 98 Ill. 126.) To constitute a common law marriage prior to 1905 no particular words were necessary. "If what is done and said evidences an intention by the parties to assume the marriage status, and the parties thereupon enter into the relation of husband and wife, that is sufficient, whatever may be the form of expression used." (*Heymann* v. *Heymann,* 218 Ill. 636.) "It is impossible to fix a standard by which the evidence of a marriage in every case should be measured. Each case must depend upon its own facts and attending circumstances." *Laurence* v. *Laurence,* 164 Ill. 367.

Many of the cases cited by counsel for plaintiffs in error are those where the meretricious relations were clearly established and were continued without being changed. In view of this record we do not think the actions and words of the defendant in error and Mrs. Moker can fairly be construed as indicating a meretricious relation. They had been married thirty years and having had trouble were divorced. They were growing old. Their friends desired to bring them together and arranged a meeting for the purpose, at which the two talked the matter over and became reconciled, and after that lived together until Mrs. Moker's death. We think the great weight of the evidence in this record supports the conclusion that they intended to, and did, assume the marriage relation after such reconciliation.

The circuit court rightly held defendant in error entitled to dower and homestead in the premises in question. The decree of that court will therefore be affirmed.

*Decree affirmed.*