## Mary G. Young, Appellant, v. Charles R. Young, Appellee.

1. HUSBAND AND WIFE, § 264*—*when cruelty shown in suit for separate maintenance.* On a bill for separate maintenance without waiving answer under oath and answer denying cruelty, testimony of the complainant concerning her husband's infatuation for another woman, that he forcibly ejected the complainant from his saloon, corroborated by the husband's bartender, and her testimony that her husband blackened her eye, corroborated only as to her subsequent appearance, is sufficient to establish cruelty in the absence of contradictory testimony.

2. MARRIAGE, § 13*—*when common-law shown.* Undisputed evidence of open cohabitation as man and wife for 12 years, including 2 years spent with the husband's parents, that the wife was active and energetic in helping the husband to build his fortune, that husband and wife joined as such in the execution of deeds and mortgages, with testimony by the wife of a common-law contract in the presence of witnesses, contradicted by the husband, *held* sufficient to show a common-law marriage.

3. HUSBAND AND WIFE, § 257*—*what need not be pleaded in answer to bill for separate maintenance.* A defendant in a suit for separate maintenance may show a previous marriage of the complainant on cross-examination without pleading it in his answer.

4. DEATH, § 2*—*when presumption of raised from absence.* In a suit for separate maintenance, testimony by the wife that her previous husband left her in St. Louis 8 years before her present common-law marriage, and that she never heard of him after that, is sufficient to establish capacity for the second marriage under the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Missouri statute, raising a presumption of death upon 7 years' absence.

5.  MARRIAGE, § 26*—*when not shown to be invalid because of existence of living, undivorced husband.*  In a suit for separate maintenance, testimony of the defendant's witnesses identifying the complainant's previous husband as a present resident in Illinois, with a wife and several grown children, will not render the second marriage invalid as it is presumed that the former husband obtained a divorce or that the identity is mistaken and the presumption of death has attached.

6.  HUSBAND AND WIFE, § 267*—*when decree fixing alimony and solicitor's fees improper on appeal.*  The Appellate Court cannot enter a decree fixing alimony and solicitor's fees on reversing a decree dismissing a bill for separate maintenance for want of equity.

Appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.  Heard in this court at the March term, 1918.  Reversed and remanded.  Opinion filed November 1, 1918.  Rehearing denied March 26, 1919.

J. M. BANDY, for appellant.

D. G. WILLIAMSON and MARK MEYERSTEIN, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

Appellant filed a bill in the Circuit Court of Madison county at the April term, 1917, alleging her marriage to appellee in March, 1900, and that at various times specified in the bill, appellee beat, choked and slapped her, by means whereof she was living separate and apart from appellee without her fault, and praying for a decree of separate maintenance.  Said bill did not waive the answer under oath.  An answer under oath was filed by appellee denying that he was guilty of the acts of cruelty alleged in appellant's bill.  A replication was filed to said answer.  The cause was heard by the chancellor in open court, a finding was

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

made for appellee and appellant's bill was dismissed for want of equity. To reverse said decree this appeal is prosecuted.

So far as the charge of cruelty is concerned, the evidence in the record is amply sufficient to support the allegations of the bill. Appellant testified that she and her husband lived together as husband and wife without trouble of any character until the year 1912, when another woman appeared on the scene with whom the record discloses appellee became infatuated. On one occasion appellant entered appellee's saloon and found appellee and this woman sitting at a wine table and on appellant remonstrating with appellee for his conduct, the woman in question blew smoke in appellant's face; and appellee violently took hold of appellant and excluded her from the saloon. Appellant is corroborated by the bartender for appellee with reference to appellee's relation with this woman and with the manner in which appellee excluded her from the saloon. Appellant testified with reference to her husband blacking her eye, and while she is not corroborated as to the violence that occasioned the discoloration of her eye, she is corroborated to the extent that, soon after the transaction complained of, others saw the blackened condition of her eye. In fact the only evidence in the record disputing the acts of cruelty is the sworn answer of appellee. When on the stand testifying he did not deny the acts of cruelty or in any way refer to them.

The argument of counsel, both those representing appellant as well as those representing appellee, is largely directed to the question as to whether or not appellant and appellee had entered into and sustained the relation of husband and wife. The undisputed evidence in the record discloses that from the year 1900 up until the year 1912, appellee and appellant lived together as husband and wife; that they were known by the people with whom they associated and did busi-

ness as husband and wife. They lived for some year
or two with the parents of appellee in the relation of
husband and wife in the State of Michigan. The rec-
ord further discloses that appellant was quite success-
ful in his business adventures, he at one time running
a saloon and boarding house which proved to. be quite
profitable. Afterwards he purchased a tract of land
and built a dance hall and ran that in connection with
his saloon and boarding house. At the time this suit
was instituted he had accumulated property aggregat-
ing in value some $40,000 or $50,000 dollars. The rec-
ord also discloses that practically all of this property
was accumulated during the time that appellee and ap-
pellant lived together. Appellant was active and ener-
getic in assisting appellee and looked after and took
charge of the rooming and boarding house and in
every way, so far as the record discloses, performed
the duties that are ordinarily performed by a wife.
The record also, disclosed that appellant joined with
appellee, as his wife, in the execution of various mort-
gages, one of which said mortgages was offered in
evidence by appellee on the trial of this cause, presum-
ably to show that the property he owned was incum-
bered.

Appellant insists that some time during the month
of March, 1900, she and appellee entered into a com-
mon-law marriage and at once assumed the relation of
husband and wife in keeping therewith. On the other
hand, appellee insists that beginning with the year
1897 he and appellant were having illicit intercourse
and that they lived in an open state of adultery from
about that time until the year 1912, when appellant
ceased living with appellee; that at no time was there
any marriage ceremony between them and that there
was no common-law marriage at any time, and that the
relations of appellee and appellant were recognized by
them to be illicit. In addition to the undisputed facts
above set forth with reference to the relations sus-
tained by appellee and appellant, during the 12 years

in which they lived together, appellant testified that she became acquainted with appellee about the year 1898; that she kept company with him from that time on until March, 1900; that in 1899 he gave her an engagement ring engraved "C. R. Y. to M. G. L. Jan. 1, 1899"; that in March, 1900, she and appellee visited the home of some people by the name of Riddell living in St. Louis, Missouri, and that while there and in the presence of Mr. and Mrs. Riddell and son, and one Joe Lash, a brother of appellant, she and appellee entered into a marriage contract. Appellant testified that the following conversation took place between them: Appellee said to appellant, "I love you dearly, Mary," to which appellant replied, "Well Charlie, you do not love me any more than I love you," to which appellee then replied, "Well then we will be man and wife. You are my wife." Appellant said, "I take you for my husband." Appellee denies that such transaction took place and strenuously contends that if this conversation was ever had or this contract was entered into, the Riddells or appellant's brother should have been called to corroborate her statement in reference thereto.

The evidence in the record, however, disclose that appellant had lost track of the Riddells. There is, however, no explanation in the record as to why she had not called her brother. It must be remembered, however, that this transaction was alleged to have taken place some 17 years prior to the trial. Appellee also knew the Riddells and he could have called them to dispute appellant if their whereabouts was known. Counsel for appellee practically concede in their argument that the evidence with reference to the relations that existed between appellant and appellee was amply sufficient if standing alone to warrant a court in finding a common-law marriage. It is, however, contended by appellee that appellant was married to a man by the name of John Getz in 1892, and that she was never divorced from him and that this man is still living and

lives at Venice, Illinois. Appellant on cross-examination admitted her marriage with Getz and says it took place in 1892; that she met Getz some 3 days before her marriage while on an excursion; that she and Getz liver together as husband and wife some 3 days and that at the end of the 3 days Getz left her, stating that the doctor had advised him he must go to Colorado on account of his health; that she never saw or heard tell of him after that time, appellant at this time being 16 years of age. Appellee over the objections of appellant's counsel offered evidence tending to show that there was a John Getz living at Venice, Illinois, and one witness on behalf of appellee identified John Getz living at Venice as the John Getz who married appellant in 1892. Appellee also offered evidence tending to show that about the year 1896 appellant and Getz were living at the home of the Riddells as husband and wife. This testimony was objected to by appellant on the ground that the answer to the bill did not raise the issue that appellant had a husband living at the time of the purported marriage between appellee and appellant. We think, however, that so far as the marriage of appellant with Getz was shown by the cross-examination of appellant, it was proper, even though no allegation of that kind was made in appellee's answer.

The witness who testified that the John Getz who lived at Venice, Illinois, was the same person who married appellant in 1892, testified that Getz ceased living with appellant prior to the cyclone which occurred in St. Louis about the year 1896, so that if his testimony is correct with reference to the time that Getz left appellant, then the testimony of these other witnesses, to the effect that appellant and Getz were living together at Riddells at the time of the cyclone in 1896, is not true. In order to determine whether or not there was a marriage entered into between appellant and appellee it will be necessary to consider the law governing

the presumptions arising from facts tending to show that persons are sustaining the relation of husband and wife and also to consider the law with reference to the presumption of death where a party has not been heard from for a period of 7 years or more. The laws of the State of Missouri were pleaded by appellant and were offered in evidence to the effect that a common-law marriage in the State of Missouri is valid. *State v. Bittick*, 103 Mo. 190; *Topper v. Ferry*, 197 Mo. 546; *Snuffer v. Karr*, 197 Mo. 182. Common-law marriages in Illinois were valid prior to the year 1905 *Heymann v. Heymann*, 218 Ill. 636; *Herald v. Moker*, 257 Ill. 27.

It is further provided by the statutes of the State of Missouri: "That if any person who shall have resided in this State go from and do not return to this State for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time." Rev. St. Mo. 1899, vol. 1, page 786, sec. 3144; Rev. St. Mo. 1909, sec. 6340; *Duff v. Duff*, 156 Mo. App. 247.

Counsel for appellee practically admit that the law is as above stated, but contend that the preponderance of the evidence is to the effect that Getz, the husband of appellant, was not dead, but in fact is living and that his home is in Venice, Illinois. In answer thereto, counsel for appellant calls attention to the fact that the record discloses that this man Getz who lives at Venice, Illinois, has a wife and several children, the oldest of whom is some 23 or 24 years of age, and that he was in the draft of June 5, 1917. Even though it be admitted that this John Getz was in fact the John Getz that appellant married in 1892, it would be presumed that Getz had obtained a divorce and was legally qualified to enter into the marriage relation with the woman with whom he is now living as his wife, unless there was evidence to the contrary. *Johnson v. Johnson*, 114 Ill. 611; *Coal Run Coal Co. v. Jones*, 127 Ill. 379.

In *Johnson v. Johnson, supra,* at page 617, the court says: "But if the law raises the presumption that the former husband was alive at the date of the last marriage, from the fact that 7 years had not then elapsed since the last knowledge of him, it also, in the absence of proof to the contrary, presumes that the parties in contracting such marriage, and in subsequently cohabiting, were innocent of immorality or crime, and that there was no legal impediment to its consummation. When a marriage is shown, in fact, the law raises a strong presumption in favor of its legality, and the burden is with the party objecting to its validity to prove that it is not valid. (Bishop on Marriage and Divorce, secs. 457, 458.) Presumptions of this class are not conclusive, but are sufficient, in general, to shift the burden of proof. (1 Greenleaf on Evidence, secs. 33-35.) These presumptions of innocence, and of the validity of the marriage, conflict with the presumption of life, and if neither presumption is aided by proof of facts or circumstances co-operating with it, the presumption of the validity of the marriage has generally been held to be the stronger, and to prevail over the presumption of the continuance of the particular life, and this is so held although the time elapsing between the last knowledge of the former husband and the second marriage is much less than 7 years."

In *Coal Run Coal Co. v. Jones, supra,* page 386, the court says: "The second marriage being shown in fact, the law raises a strong presumption in favor of its legality, which we do not regard as overcome by mere proof of a prior marriage, and that the first wife had not obtained a divorce. (See *Johnson v. Johnson,* 114 Ill. 617.) The husband might have obtained such divorce and left him free to contract the second marriage."

All of the evidence with reference to there being a John Getz living at Venice, Illinois, was given by witnesses testifying on behalf of appellee and practically,

if not all of these witnesses, testified that this John
Getz was living with his wife and had several children
as above stated so that the fact of the marriage of
John Getz at this time is furnished by the evidence of
appellee.   The proof fails to satisfy our minds that
the John Getz who is living at Venice, Illinois, is the
same John Getz to whom appellant was married.   The
only witness that undertakes to testify thereto shows
by his testimony that it is of a very unsatisfactory
character.   He testified that this man Getz left appel-
lant prior to the St. Louis cyclone and that he was
gone something like a year, and on cross-examination
he would not undertake to say he was not gone for
some 3 or 4 years.

We think, therefore, that the record wholly fails to
show that at the time appellant claims she and appel-
lee entered into the marriage relations and at the time
that the undisputed facts in the record show that these
parties in fact did live as husband and wife (so far
as the outside world is concerned) that she, appellant,
was in a position to enter into such relation.   If she is
correct in her contention that her husband had been
gone for 8 years prior to her entering into the mar-
riage relation with appellee, then under the laws of
the State of Missouri her husband was presumed to
be dead, or if the John Getz who lives at Venice, Illi-
nois, and who is now married and with a family of
some 4 or 5 children and with a son some 23 or 24
years old, is the same John Getz that appellant was
married to in 1892, then the law will presume, in the
absence of proof, that he had been divorced from ap-
pellant at the time he entered into the marriage rela-
tions with his present wife, rather than to presume
that he is guilty of bigamy and that his children are
illegitimate.

Appellee insists, however, that the record shows
that there was no divorce of the marriage relation of
appellant and Getz and that the records of the courts

of St. Louis have been searched and no divorce proceeding was found. It would not follow from this evidence that there had been no divorce, for the evidence shows that Getz was gone for at least one year from St. Louis after he ceased living with appellant and a divorce could have been obtained in another jurisdiction.

In view of the conclusive character of the evidence in the record tending to show the marriage relation between appellant and appellee, and in view of the fact that the only evidence to the contrary is the answer and testimony of appellee, we feel that the finding of the chancellor in this case is against the manifest weight of the evidence and that the judgment and decree should be reversed and the cause remanded.

Counsel for appellant insist that this court enter a decree fixing alimony and solicitor's fees based on the evidence in the record. We do not agree with counsel for appellant that this is the proper practice. In our opinion the judgment of the court should be reversed and the cause remanded with directions to the court to enter a decree of separate maintenance and leave it to that court to fix the amount of alimony and solicitor's fees.

For the reasons above set forth the judgment and decree of the trial court will be reversed and the cause will be remanded for further proceedings consistent with the findings herein.

*Reversed and remanded.*