## Willia Acklin, Appellee, v. Employes' Benefit Association of American Steel Foundries, Appellant.

1. APPEAL AND ERROR—*when question not raised below not reviewable.* A question not raised in the lower court cannot be raised for the first time in this court.

2. MARRIAGE—*sufficiency of evidence to establish common-law marriage.* In an action upon a life benefit certificate by plaintiff as the wife of insured, evidence *held* to show a common-law marriage between the parties in the State of Missouri.

3. MARRIAGE—*validity of common-law marriage in Missouri.* A common-law marriage is valid under the laws of Missouri.

4. CONFLICT OF LAWS—*law controlling validity of marriage.* The validity of a marriage performed in another State, when questioned in a suit in this State, is to be determined by the laws of the State in which the marriage was performed, unless such marriage is in violation of some positive law of this State.

5. MARRIAGE—*validity of common-law marriage consummated in another State.* A common-law marriage consummated in the State of Missouri and valid by the law of that State will be recognized as valid in this State.

Appeal from the City Court of Granite City; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court at the March term, 1920. Affirmed. Opinion filed October 28, 1920. Rehearing denied December 22, 1920.

PAM & HURD and WILLIAM E. WHEELER, for appellant; J. L. SIMPSON and M. F. OEHMKE, of counsel.

HARRY FAULKNER, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

This is an action in assumpsit brought by Willia Acklin, appellee, against the Employes' Benefit Association of American Steel Foundries, appellant. The suit is brought to recover the amount of death benefits alleged to be due from the appellant to appellee by virtue of a membership held in appellant association by one Merritt C. Acklin in his lifetime. A jury was waived and upon the trial below judgment was rendered in favor of appellee for $660. From said judgment this appeal is taken.

The declaration consists of the common counts and one special count. The special count alleges the membership and death of the assured and also sets forth the relationship of appellee to said deceased. A demand for payment of said benefits and refusal thereof were also alleged. To this declaration appellant filed a plea of the general issue and said parties stipulated that appellant might introduce under such plea any and all proper defenses although not specially pleaded.

Merritt C. Acklin in his lifetime and at the time of his death was employed by the American Steel Foundries and while working for said company he applied for and was admitted to membership in appellant association. In his application for membership Acklin gave the name of appellee as his wife and it was provided in said application that any death benefits accruing by virtue thereof should be paid to ap-

pellee as his wife. In the early part of 1919 said Acklin died from pneumonia and at the time of his death he was a member of said association in good standing.

Shortly after the death of said Acklin, appellee made demand upon appellant for payment to her of the amount of death benefits due under said certificate issued to Acklin in his lifetime, amounting to $660. Payment thereof was refused by appellant on the ground that appellee was not the lawful wife of deceased.

It appears that some time in October, 1914, Merritt C. Acklin, the deceased, went to the room of appellee at 3437 Pine St., St. Louis, Missouri, and began a conversation as follows: "We were sitting talking, and he said he loved me the first thing, and I said, 'Is that so?' and he said, 'yes.' We were talking about getting married and things like that. He said, 'Just let's get married,' and I said, 'How can we?' and he said, 'Well, easy,' and I said, 'We can't, because we can't get no license at this time in the evening,' and he said, 'We don't need no license. In Missouri you can live together without a license,' and I said, 'All right.' He said, 'Well, then, you be my wife, and I will be your husband,' and after that he introduced me as his wife."

The record discloses that following said conversation said parties began living together and continued so to do until the death of the assured. The testimony of appellee is further to the effect that they first lived at appellee's room for a short time and subsequently rented a cottage at 3403 Lawton street, St. Louis; that deceased bought furniture of various companies for the house, introducing appellee as his wife to said merchants and that he also introduced her to various other parties as such. Appellee's testimony in regard thereto is corroborated by various other witnesses. It also appears that deceased in his answers in his questionnaire stated that he was married and

that appellee was his wife; that he provided a home for and held appellee out as his wife and she at his death conveyed his remains to some point in the south for burial.

Appellee, after the death of assured, made application for and was paid the wages due him for labor performed and certain amounts that were due deceased on Liberty bonds.

Appellant contends, first, that the facts properly in evidence are insufficient to constitute a valid marriage between appellee and deceased under the common law of the State of Missouri; second, if there was such a common-law marriage, that that marriage will not be recognized and held valid in the State of Illinois in a proceeding having such marriage as its basis.

Appellant also urges a third reason, namely, that there was no valid marriage between the parties, and that Acklin's statement in his application for membership in said association to the effect that appellee was his wife was untrue and fraudulent, and would work a forfeiture of any rights under the benefit certificate. This last question, however, not having been raised in the lower court, cannot be raised for the first time in this court on appeal.

We think the evidence shows a common-law marriage in St. Louis, Missouri. The conversation related by appellee with deceased shows an intention to enter into a marriage agreement by the parties and although not worded with that exactness of legal phrase which one would expect from those learned in the law, still the language employed evidenced a present intention to consummate the marriage relation and was immediately followed by cohabitation of a continuous character from that date until the death of the husband. The entire evidence touching the question of cohabitation is consistent with and supports the contention of marriage.

Under the laws of the State of Missouri, a common-

law marriage in that State is valid. *Young v. Young,* 213 Ill. App. 402-9; *State v. Bittick,* 103 Mo. 190; *Topper v. Perry,* 197 Mo. 546; *Snuffer v. Karr,* 197 Mo. 182.

The legality of a marriage performed in a foreign State when questioned in a suit in this State is to be determined by the laws of the State in which the marriage was performed, unless such marriage is in violation of some positive law of this State. *People v. Siems,* 198 Ill. App. 342; *Reifschneider v. Reifschneider,* 241 Ill. 92.

As to the second contention of appellant, that even if there was a common-law marriage in Missouri such marriage would not be recognized in Illinois, it is sufficient for us to refer to *Young v. Young, supra,* as an answer thereto. That was a case for separate maintenance and appellee therein contended there was no marriage. It was there held that a common-law marriage had been contracted between the parties in the State of Missouri and that appellee therein was appellant's common-law wife and entitled to separate maintenance according to the evidence.

Complaint is also made by appellant of the ruling of the court on the propositions of law. We have examined the same and are of the opinion that there was no substantial error in the court's rulings on the same.

In our opinion the judgment of the trial court should be affirmed and it is so ordered.

*Judgment affirmed.*