## EMMA SNUFFER v. KARR, Appellant.

### Division One, June 19, 1906.

1. **FINDINGS OF FACT: No Exception.** The rule is that where there was no exception to the finding of facts in the trial court, this court will not review the evidence to see whether or not those facts were sustained thereby.

2. ———: ———: **Conclusions of Law: Exception: Dower: No Divorce.** In such case the court will usually render such decree as the law requires with these facts as a basis. As, for instance, where there was a finding of fact that there was a legal marriage in Tennessee, that the wife was still living, that there had been no divorce, but that the marriage had under the statute of Tennessee been dissolved by the absence of the husband, but makes no finding as to whether there was such a statute in existence, this court would, if it followed its usual rule, reverse the judgment that plaintiff, another woman, by subsequent marriage with the same man was entitled to dower in his lands, and not review the facts or further declare the law. But in this case, owing to the serious position in which the plaintiff would be left by such reversal, and owing to the fact that there is no finding as to the existence of the statute on which the judgment is based, the court proceeds to consider other features of the case, and to pass on the sufficiency of the statute to support the judgment.

3. ———: **Statute of Another State.** Courts do not take judicial notice of the statutes of another State. Such statute is a mere bit of evidence, and if a decree is to be based thereon its existence should find place in the finding of facts, and not leave the finding to be supplemented by the statute in order to maintain the judgment.

4. **DIVORCE: Marriage Dissolved by Absence: Tennessee Stat-tute: Dower.** The Tennessee statute provides: "A second mar-riage cannot be contracted before the dissolution of the first. But the first shall be dissolved for this purpose, if either party has been absent for five years and is not known to the other to be living." *Held,* first, that a husband that was married in that State in 1860 and soon afterwards abandoned his wife and concealed himself in this State, should not be permitted to invoke the beneficent provisions of this statute, even if it otherwise has life here in determining the right of a subsequent wife to dower; *second,* the statute has no extra-territorial force, and could not have changed the man's marital status while he was domiciled in this State; *third,* the statute, having first been enacted for the purpose of defense in prosecutions for bigamy, will not be given force to dissolve marriage ties of the party in fault, especially since the Tennessee courts seem to have given it no such force; and, *fourth,* a wife by a subsequent marriage to the man married in Tennessee, who abandoned his wife and concealed himself, cannot claim dower in his estate here, if his real wife survived him.

5. **COMMON LAW MARRIAGE: Solemnized by Minister: No Li-cense.** Where there was a public marriage and a ceremony by a minister of the Gospel and a living together as man and wife for several months thereafter, there was a good common law marriage, although there was no license or record of license and although the statutes required such license.

6. ———: ———: ———: **In Tennessee.** And there being no ex-press statute of Tennessee which declared that a marriage sol-emnized without a license was invalid, it will be *held,* accord-ing to the general rule, that a marriage solemnized in that State in 1860 according to the common law was valid.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED (*with directions*).

*R. A. Hewitt, Jr.,* and *James T. Blair* for appel-lant.

(1) The written statement of conclusions of facts· and law becomes a part of the record proper, and if the finding of facts does not support the judgment based thereon, this court should and will reverse judgment

for error apparent on the record. Stutter v. Streit, 21 Mo. 157; Allison v. Darton, 24 Mo. 343; Nichols v. Carter, 49 Mo. App. 401; Land Co. v. Breitz, 125 Mo. 418; Freeman v. Hemenway, 75 Mo. App. 621. (2) The finding of the facts in this case as made and filed herein by the court does not support or justify the conclusions of law, and the judgment rendered in this cause. Therefore the judgment should be reversed. Freeman v. Hemenway, supra; Nichols v. Carter, supra; Blount v. Spratt, 113 Mo. 55. (3) The facts found by the court preclude the very idea of any other judgment than one for defendant.

*W. H. Haynes* for respondent.

Under the affirmative defense of a former marriage, in Tennessee, the burden was on appellant to prove that such marriage was in accordance with the laws of that State; this he failed to do, there is no proof of a license authorizing the marriage, nor that the parties declared that they accepted each other as man and wife. The laws of that State required both, and a marriage without either is illegal and void. Common law marriage is not permitted. Code of Tennessee, 1858, Meigs and Cooper, p. 480, introduced in evidence; remained until 1871, Statutes 1871, by Thompson and Steger, page 1096. Bashaw v. State, 1 Yerg. 177; Grisham v. State, 2 Yerg. 589. But if the Tennessee marriage was valid either by statute or common law, it then devolved upon appellant to prove that the Tennessee wife knew that her husband was living when he married the second time in 1881. The proof shows a dissolution of the Tennessee marriage, if there was one, and that the California marriage to respondent was lawful.

GRAVES, J.—This is an action for the recovery and admeasurement of dower. Plaintiff claims to be

the widow of Isaac F. Snuffer. Upon motion of the defendant, who through mesne conveyances, claimed a fee simple title through a deed signed by Isaac F. Snuffer, alone, a finding of facts was made by the trial court. This finding of facts is well supported by the evidence unless it is in some way shattered by reason of a statute of the State of Tennessee, which was introduced in evidence. The finding of facts which is, and was as a matter of fact, made a part of the judgment herein, is as follows:

"1. That on the 16th day of February, A. D. 1860, Isaac F. Snuffer and Kate Wallace were married in the State of Tennessee, Claiborne county, and for a short time lived together as man and wife in said State.

"2. That thereafter at the said State and county in the year 1860, said Isaac F. Snuffer abandoned his said wife, Kate (Wallace) Snuffer, and removed to the State of Missouri, and has continued to remain away from the State of Tennessee ever since, and that the said Kate (Wallace) Snuffer did not hear from him, the said Isaac F. Snuffer, after the year 1862.

"3. That the said Kate (Wallace) Snuffer was living at the time of the institution of this suit and had not remarried or been divorced.

"4. That in the year 1881, Isaac F. Snuffer went with plaintiff (then aged 19 years and unmarried) to the State of California and there, in said year of 1881, went through a legal and common law ceremony of marriage in due form with plaintiff.

"5. That thereafter Isaac F. Snuffer lived with the plaintiff in this case as his wife, holding themselves out to the public as husband and wife, in the States of California, Washington and Missouri, successively, until the year 1888, when he left plaintiff and the children born of the marriage and has not lived with her as his wife since.

"6. That on the 4th day of September, 1900, Isaac F. Snuffer died in the State of Arkansas.

"7. That Isaac F. Snuffer was seized of an estate in fee simple subsequent to the year 1881 and up to the — day of —— A. D. 1893, when he, alone, executed a warranty deed to said lands to Thomas Vanbebber, who later conveyed to this defendant in due form; and that the defendant, Karr, is now in possession of the said lands claiming title thereto in fee."

The Tennessee statute introduced in evidence herein above mentioned is as follows:

"A second marriage cannot be contracted before the dissolution of the first. But the first shall be regarded as dissolved for this purpose, if either party has been absent for five years, and is not known to the other to be living."

Upon this finding of fact the court entered judgment for the plaintiff in accordance with the prayer of her petition, appointing commissioners to admeasure her dower, which was done, and later the report of the commissioners was approved and an assessment of damages had and a final judgment entered in favor of plaintiff. After unsuccessful motions for new trial and in arrest of judgment, defendant appealed.

So far as the record shows, neither party excepted to the finding of facts as made by the trial court. In this court defendant does not challenge the finding of facts, but contends that upon the finding of facts as made, the judgment should have been for him. Plaintiff, although judgment was for her, challenges the first finding of facts, and claims that there was no valid marriage in Tennessee. The trial court evidently proceeded upon the theory that there was a valid marriage of the deceased, Isaac F. Snuffer, to Kate Wallace, in the State of Tennessee in the year 1860, but that for the purpose of re-marriage the same had been dissolved by force of the statute aforesaid before his marriage to this plaintiff in the State of California.

The marriage of Snuffer to the plaintiff is not attacked, except upon the ground that he was married at

the time, and that the marriage for that reason was void.

Neither marriage was what might be termed purely statutory so far as the proof shows, but in each the rites of matrimony seemed to have been solemnized. In the first by a Methodist preacher, and in the second by a justice of the peace in California.

Defendant contends that the judgment must stand or fall upon this finding of facts, and that this court cannot go back of the finding of facts, and look into the evidence to determine whether such finding is supported by the evidence. On the other hand, plaintiff urges that this court should examine all the evidence, and if upon all the evidence, the judgment should be sustained, a judgment of affirmance should follow here. Plaintiff further contends that in the State of Tennessee what is known as a common law marriage was not recognized in that State, and that this court should go back of the finding of facts, and find that there was no valid marriage in the State of Tennessee, thus validating the marriage in the State of California.

This statement is sufficient for the discussion of all the points involved and urged in this controversy.

I. Under the finding of facts made by the court it appears that there was a marriage between Isaac F. Snuffer and Kate Wallace in the State of Tennessee in 1860. This finding was upon the evidence in the case, including statutes and other documentary evidence. Under the same finding the said Kate (Wallace) Snuffer is still living and no divorce has ever been procured. The finding in no way suggests a dissolution of the marriage—not even by the statute introduced. With a valid marriage found from the facts, and no dissolution found by divorce or otherwise, in the finding of facts, it is difficult to harmonize the judgment with the finding of facts. The statute introduced in evidence was nothing more than any other evidence in the case, and if the trial court expected to rely upon this bit of

evidence for a dissolution of the marriage found to have existed, there should have been a finding, first, as to such marriage, and then a finding of the dissolution thereof by this statute. The trial court does not even find that there was such a statute, but leaves the finding of facts to be supplemented by this statute in order to maintain the judgment. With this defect in the finding of facts, and there being no exceptions saved and preserved by plaintiff as to the finding of facts, we might content ourselves by simply holding that under the facts as found the judgment cannot be sustained. Plaintiff urges that we go back of the finding of facts, and if upon the whole record the judgment is for the right party, we should affirm. This is not a case in equity, and as we understand the rule, where there is a finding of facts, in a case at law, and no exceptions taken thereto as in this case, then we either affirm or reverse the judgment, as by our conclusions of law, we may be compelled to do, upon the facts as found by the trial court. [Loewen v. Forsee, 137 Mo. l. c. 38; Freeman v. Hemenway, 75 Mo. App. l. c. 621.] In the latter case it is said:

"The correctness of the finding of facts may be assailed in the appellate court on the ground of there being no evidence to support it, or that it does not include all the issues, if the evidence is preserved by bill of exceptions. [Nichols v. Carter, 49 Mo. App. 401.] But we understand from a recent ruling of the Supreme Court, in order to assail such finding, exception must be taken and preserved by the objecting party. [Loewen v. Forsee, 137 Mo. 38.] Defendants failed to save any exceptions to the finding or conclusion of law and hence we can not look into the evidence to ascertain whether it was a proper or complete finding on the issues. But the finding of facts and conclusions of law therein become a part of the record proper, and we will examine into them to see if the findings support the

conclusion, although no exception is taken.  [Nichols v. Carter, supra.]''

So that in this case, there being a valid marriage found as between Isaac F. Snuffer and Kate (Wallace) Snuffer in the State of Tennessee, and no finding that the same was dissolved by divorce or otherwise, we could content ourselves with directing a judgment for the defendant upon the finding of facts, and perhaps should do so, and would do so, without considering other questions, but for the serious attitude in which plaintiff and her children will be left, which condition admonishes us to discuss other features of the case.

II.  The trial court having found all facts necessary to bring the case within the statute of Tennessee hereinabove set out, evidently entered its judgment upon the theory that this statute worked a dissolution. This statute is a mere bit of evidence in the case and the court should have found as a fact that there was such existing statute in the State of Tennessee, and that there was a dissolution of the marriage thereby. Courts cannot take judicial notice of the statute of a sister State, but the same must be proven as any other fact, and if it is a case wherein a finding of facts is being made, such finding should make a showing of the fact that there is or was such a statute.

But passing the defect in the finding of facts, and going to the real meat of this controversy, it is contended by the plaintiff that the trial court erred in finding that there was a valid marriage in Tennessee, in 1860, but if there was, then the same was dissolved by force of this statute.  These questions we will consider, but in reverse order.

1.  Snuffer was domiciled in Missouri during all the time of the running of this  statute, that is to say, for five years after he last wrote his Tennessee wife, or she last wrote him.  The wife was at all times domiciled in Tennessee.  What then was the effect of this statute?  How does it affect Snuffer of Missouri, and

Mrs. Snuffer of Tennessee? Can a man desert his wife, domicile himself in another State, hide himself so that his wife cannot know whether he is living or dead, and then at the end of five years come out in the sun light a divorced man? In other words, even if the statute in other ways has life and substance, can its beneficent influence be invoked by one who deserts his spouse, and was all the time violating, not only the obligations of his marriage vows, but the law of the land as well? These are some of the questions suggested.

(a) We are of the opinion, first, that this statute of Tennessee has no extra-territorial force and could have, for that reason, in no wise have changed the status of Snuffer domiciled in the State of Missouri. [State Bank of Eagle Grove v. Dougherty, 167 Mo. 1; State v. Clark, 178 Mo. 20.]

(b) Tracing the history of this statute, we find that its provisions were first intended to apply to prosecutions for bigamy. In the Laws of Tennessee, 1829, chap. XXIII, sec. 16, p. 29, we find this langauge:

"Proviso—No person shall be deemed guilty, under this section, whose husband or wife shall be continually remaining beyond the limits of the United States for the space of five years together; or whose husband or wife shall absent him or herself the one from the other, for the space of five years together, the one of them not knowing the other to be living within that time."

It is true that in Code of Tennessee, 1858 (Meigs & Cooper), it appears in section 2438, in language as in the statement of this case first quoted. We can see how the Legislature as bearing upon the question of intent, might give the defendant in criminal cases where he has acted in good faith the benefit of a statute of this kind, but as a statute to absolutely dissolve the marital relations, sacred as they are and should be, we have serious questions of the validity of such statute in view of the well-settled doctrine of public policy, if it is to

be construed to dissolve marriage ties as to the party in fault, or the wrongdoer. But whatever force may be given to it in Tennessee (although we have found no construction given it by the courts there) we hardly feel that it should be transplanted and permitted to grow in this State, at least without some legislative sanction.

(c) However, whatever be the value of this statute, as a law, either in or out of the State of Tennessee, in our judgment it cannot be strained to an extent as would relieve the plaintiff from the acts of Isaac F. Snuffer. Under the evidence Snuffer left his wife in Tennessee. Can it be said that the statute was intended to protect the party in the wrong? If so, all a resident of Tennessee, desiring a dissolution of the bonds of matrimony, would have to do, would be to come to Missouri, hide out for five years, keeping his place of hiding unknown to his wife in Tennessee, and at the end of the time, the marriage vows have been wiped out, the bonds of matrimony dissolved, and all this for the party in fault. Such is not the law, and in construing a very similar statute the Court of Appeals in New York has so held. [Gall v. Gall, 114 N. Y. 109; see also, opinions fully as strong in Wyles v. Gibbs, 1 Redf. 387, and Machini v. Zanoni, 5 Redf. 492.]

In the case at bar there is no evidence of the good faith of Snuffer in this second marriage. There is no evidence that he knew whether his wife in Tennessee was living or dead. She was living when he last heard from her, and when he last made an effort to hear from her, so far as this record shows. In our judgment, if a statute such as relied upon here is to be held valid at all, it must be limited to the confines of the State giving it birth, and there construed to apply to the injured and innocent party to the marriage contract, or at least to the one shown to have acted with the best of faith, as seems to be the rule in New York.

We conclude, therefore, that this statute did not

dissolve the marriage between Isaac F. Snuffer and Kate (Wallace) Snuffer, if there was such marriage.

III. We now come to the question of the validity of the Tennessee marriage. The trial court found that there was a valid marriage and in the finding we concur. Respondent contends that a common law marriage was not recognized in Tennessee, and that the proof in this case fell short of a statutory marriage. As we have gone behind the finding of facts upon other questions in this case, we will do the same as to this question. The evidence shows a public marriage and a ceremony by a minister of the Gospel and a living together as man and wife for several months thereafter. No records or license are shown, and a license seems to have been required. Respondent, however, practically concedes a good common law marriage, if such a marriage was good in Tennessee at that time.

As holding that a common law marriage was not good in Tennessee we are cited to two cases; Bashaw v. State, 1 Yerger 177, decided in 1829, and Grisham v. State, 2 Yerger 595, decided in 1831. These were criminal prosecutions, the first for bigamy, and the other for open and notorious lewdness. In the first, it is true that WHYTE, J., and CATRON, J., in their opinion held to the doctrine that a common law marriage should not be recognized, but PECK, J., who concurs in the result and in not applying the common law doctrine to the case at bar, says:

"To all purposes except *two*, cohabitation alone is necessary—the one is, where the question of marriage arises on an indictment for bigamy—the other, in a suit for criminal conversation. These exceptions are made in tenderness to the party accused. In other cases touching the proof of marriage a sensible and obvious rule of evidence has been let in, to-wit, that where persons have held themselves out as filling any particular station, they shall not be permitted to dispute that they had been regularly called to fill that station;

and though this rule is departed from in the particular case before us, yet it does not, for that reason, follow that every *minutia* of the marriage must be proved, to make it a legal marriage. The act says a license may be issued, but it cannot be pretended by any lawyer that a marriage publicly made, and a community called to witness it, was not a legal marriage, and binding upon the parties. No court, for the want of a license, would pronounce the marriage clandestine—no rule of law would permit such a construction.''

In the second case mentioned, WHYTE, J., cites with approval the opinion written by him in the Bashaw case,

Later, however, in 1842, we find the common law doctrine of marriage applying in civil cases, in case of McCorry v. King's Heirs, 3 Humph. 273, expressed in this language by REESE, J:

''The whole body of the common law on the subject of the domestic relations, and especially the relation of baron and feme, except so far as changed and modified by statute, has ben adopted among us.''

In 1846, GREEN, J., is of opinion that the question passed upon in the Bashaw case deserves *a grave reconsideration*, but that it was not necessary to go into it in the case, then in hand, the case of Rice v. State, 7 Humph. 14. The learned judge uses this language:

''Whether, where an *actual* marriage has taken place, and the parties have cohabited as man and wife, the marriage shall be held void for any irregularity of the license, or bond, or certificate of solemnization, deserves *a grave reconsideration.* But this is not a fit case for such investigation, as there is no proof here of the marriage, except that which is afforded by the certified copy of the license, and the return of the justice of the peace thereon.''

In 1860, in case of Johnson v. Johnson, 1 Coldw. l. c. 630, McKINNEY, J., expresses his doubt in this language:

"It seems to be supposed that the case of Bashaw v. State, 1 Yerger 177, and Grisham v. State, 2 Yerger 589, established the general and unqualified proposition that the common law mode of solemnizing the matrimonial union is abrogated absolutely by our statutory provisions; and that a marriage in that form is of no validity in any case whatever. Whether this conclusion can be sustained, either upon sound principle, or weight of authority, we need not now stop to consider. For the purpose of the present determination, it might be conceded (though we express no opinion upon the point), that the marriage was illegal, for want of compliance with the formalities prescribed by the statute."

This case upon the whole practically disapproves of the doctrine of the Bashaw case.

All apparent conflicts in the Tennessee cases are readily cleared up when we get the general rule and then apply the statutes in force. The general rule is thus stated in 19 Am. and Eng. Ency. Law (2 Ed.), 1195:

"In nearly all the States the statutes direct that a license must be procured, that only certain persons shall perform the cermony, that a number of witnesses shall be present, that a certificate of marriage shall be signed, returned, and recorded, and that persons violating these provisions shall be guilty of a criminal offense and liable to certain penalties. Such statutes are directory only, addressed to clergymen, magistrates, and public officers, to secure publicity and a record of the evidence of marriage. In the absence of any positive provision declaring that all marriages not celebrated in the manner prescribed shall be void, it is generally held that a marriage without conformity to such regulations is valid if the parties have entered into the contract of marriage according to the common law."

Among the cases cited in support of the text, the author cites from Tennessee, the more recent cases, An-

drews v. Page, 3 Heisk. 653, and Johnson v. Johnson, 1 Coldw. 626. He also cites the Bashaw and Grisham cases. In our judgment the Bashaw and Grisham cases can be recognized as good law, and yet as not authority in the case at bar. One of the statutes considered in the Bashaw case provided: ''And all marriages solemnized as aforesaid without such license shall be and are hereby declared illegal and void.'' This statute was one of the potent factors in the decisions in these two cases. At the time of the marriage involved herein, 1860, there was no such positive declaratory statute, but only the usual directory statutes described in the text from Encyclopedia of Law. So that the court might properly hold at the one time, with this express statute, that no common law marriage could be recognized, but would be unwarranted to so hold under the statutes in force at the date of this marriage, which was Code of Tennessee, 1858 (Meigs & Cooper), secs. 2436 to 2447. There are no words of nullification in these sections. It is true that penalties are provided, as penalties are provided in Missouri and other States, but the general rule, and the one supported by the consensus of opinion, is, that unless there is an express nullifying statute, common law marriages are valid. We find no civil case, even in Tennessee, where this doctrine has not received recognition.

However harsh it may seem to be as to the plaintiff and her children, we are compelled to hold that in this case, the evidence satisfactorily shows the previous marriage of Isaac F. Snuffer, in 1860, and fails either in law or fact to show a dissolution thereof. It follows, leaving out the technical question of the defect in the finding of facts, that the judgment herein should be reversed, and the cause remanded to the circuit court, with directions to enter up judgment for the defendant upon the finding of facts, and it is so ordered.

All concur.