**Irwin M. COHEN, Appellant,**

v.

**OZARK AIRLINES, INC., Respondent.**

**No. 42978.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 6, 1981.

Ronald Jenkins, St. Louis, for appellant.

Mary E. Case, R. E. Keaney, St. Louis, for respondent.

CRIST, Presiding Judge.

Appellant Irwin M. Cohen (plaintiff) sustained personal injuries while deplaning from an Ozark flight in Minneapolis-St. Paul on March 29, 1978. He sought emergency treatment in Minneapolis for a ligament injury to his left thumb and upon his return to St. Louis was referred to Dr. Alan H. Morris, an orthopedic surgeon in St. Louis County, Missouri. Plaintiff remained in the care of Dr. Morris from April, 1978 until August, 1978, after which time Dr. Morris pronounced the plaintiff's condition to be satisfactory.

Plaintiff was at all relevant times a resident of the State of Missouri, and respondent Ozark Airlines, Inc. (defendant) was a Missouri corporation with its principal place of business in the State of Missouri. Plaintiff retained an Illinois attorney to represent him in seeking recovery from defendant for his injuries.

On September 11, 1978, plaintiff's attorney demanded $2,500 for settlement of plaintiff's claim. Defendant's representative, Wayne D. Johnson of Peter J. McBreen and Associates, Inc., countered with an offer of $2,000. Plaintiff's attorney indicated plaintiff's acceptance in his letter of September 14, 1978 to defendant's representative. These negotiations took place in Illinois. At no time did defendant cause plaintiff to be examined by its own physicians, but relied solely on what plaintiff disclosed as to his injuries.

A draft in the amount of $2,000 was issued to plaintiff on behalf of defendant. This draft has been paid. Plaintiff executed a release on September 25, 1978 in the office of his attorney in Collinsville, Illinois which acknowledged the receipt of the $2,000 draft. Plaintiff's attorney was present when plaintiff executed this release, and signed as a witness to it. The release specifically stated that it applied "to all unknown injuries and damages resulting from said accident, casualty or event as well as to those now known." By the time he signed the release, plaintiff had incurred $984.41 in special damages as a result of the injury to his thumb.

Approximately one month after the execution of the release plaintiff discovered that he had suffered a herniated disc. Neither plaintiff nor his attorney knew of the injury at the time the release was executed. Since that time, plaintiff has incurred over $14,000 in special damages, all of which are attributable to plaintiff's herniated disc.

On December 4, 1979, over one year after execution of the release, plaintiff filed this lawsuit. Defendant asserted the release and asked for summary judgment. The trial court gave defendant summary judgment on May 8, 1980. We affirm.

■ This case turns on whether the trial court should have applied the law of another state in lieu of the law of Missouri. There is no question that under Missouri law, summary judgment was proper. The release declares "discharge of all actions, claims and demands whatsoever" resulting

from plaintiff's slip and fall. That wordage arrests any conjecture as to the intent of the parties concerning the effect of the release because the intent is adduced without question by the words employed. *State ex rel. Stutz v. Campbell*, 602 S.W.2d 874, 876 (Mo.App.1980). The release, therefore, should be enforced by its language unless there is a claim of fraud, overreaching or misrepresentation. Plaintiff brought forth no such assertion. Therefore, if Missouri law is applicable, the release is valid. *Sanger v. Yellow Cab Company, Inc.*, 486 S.W.2d 477, 478 (Mo.banc 1972).

■ Without mining the depths of conflict of laws, we find that the trial court properly applied Missouri law for the simple reason that it was never put on notice by the plaintiff that the law of another state was applicable. The courts of this state are required to take judicial heed of the statutes and judicial decisions of other states under the Uniform Judicial Notice of Foreign Law Act, § 490.070 et seq., RSMo. 1978, *Ellsworth v. Worthy*, 612 S.W.2d 396, 399 (Mo.App.1981). In order for courts to take such notice, however, they must be made aware that the law of another state should be applied. Rule 55.21 provides in part:

> (b) Judicial Notice—Law of other States. In every action or proceeding wherein the pleading states that the law of another state is relied upon or contains allegations which show that the law of another state must be applied, the courts of this state shall take judicial notice of the public statutes and judicial decisions of said state. The court may inform itself of such laws in such manner as it may deem proper, and may call upon counsel to aid it in obtaining such information.

The pleadings in the instant case nowhere state that any particular law is relied upon. The question then becomes whether they "contain allegations which show that the law of another state must be applied."

The history of judicial cognizance of foreign law has been marked by progressive liberality. Under the common law, courts could not take judicial notice of the law of sister states. Instead, foreign law had to be pleaded and proved as any other fact in a case. See, *Snuffer v. Karr*, 197 Mo. 182, 94 S.W. 983, 985 (1906). Such technical requirements, of course, led to ludicrous results, as our Supreme Court in *Gorman v. St. Louis Merchants' Bridge Terminal Ry. Co.*, 325 Mo. 326, 28 S.W.2d 1023, 1024–1025 (1930) pointed out when it refused to take judicial heed of Illinois law which had been neither pleaded nor proved:

> This ... seems an absurd thing to say when it is considered that the official reports of the courts of last resort of our sister state are lying here before us and that we frequently cite cases reported in them as persuasive authority in support of our own rulings. But until the Legislature sees fit to fully release us from this archaic rule [citation omitted] we are supposed to abide by it. Being in ignorance, therefore, of the common law as interpreted by the courts of Illinois, it not having been pleaded, we must apply it as expounded in this state.

The Legislature responded to this call for action by removing the requirement that foreign law be proven and in 1949 adopted the present statute. But the present statute is not without its own problems. Section 490.080 requires only that "judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States" be taken by our courts. There is no requirement, however, that foreign law be pleaded in order for the provision to come into play. See, *Valleroy v. Southern Railway Company*, 403 S.W.2d 553, 558 (Mo.1966). This deficiency has led the Commissioners on Uniform State Laws to advance Section IV of the Uniform Interstate and International Procedure Act to displace the present statute, which provides in part:

> § 4.01. Notice—A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this state shall give notice in his pleadings or other reasonable notice.

We believe that this proposal states the intent of the commissioners in advocating and our Legislature in adopting the present Uniform Act. Therefore, we view the requirement of 55.21(b) that there be allegations "which show that the law of another state must be applied" as necessitating some sort of notice in this regard.

In the instant case, plaintiff provided no notice whatsoever that he believed Illinois law to be applicable to the validity of the release. Both the defendant and the trial court were entitled to such notice and the court should not be convicted of error on matters which were not brought to its attention. Plaintiff is not entitled to sit back in silence at the trial court level and pick and choose the law of other jurisdictions on appeal. See, *Hartman v. Hartman*, 602 S.W.2d 932, 934 (Mo.App.1980).

Applying our own law, we affirm the trial court's grant of summary judgment.

Judgment affirmed.

REINHARD and SNYDER, JJ., concur.