**CUB CADET CORPORATION, an Ohio Corporation, Appellant,**

v.

**MOPEC, INC., a Missouri Corporation, d/b/a Martin Equipment, E. Russell Martin, Sr., Estate, E. Russell Martin, Jr., Conservator, and Shirley Martin, Individually and as Guardian for the Estate of E. Russell Martin, Sr., Respondents.**

**No. WD 59963.**

Missouri Court of Appeals, Western District.

May 28, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 2002.

Richard M. Beheler, Kansas City, for Appellant.

Leonard K. Breon, Warrensburg, for Estate of E. Russell Martin, Sr.

Robert M. Liston, Sedalia, for Mopec, Inc., and Shirley Martin.

Before ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Cub Cadet Corporation filed suit seeking a deficiency judgment and fraud damages against Mopec Corporation and its principals/guarantors, Russell and Shirley Martin,[1] after Cub Cadet repossessed and sold Mopec's inventory of outdoor equipment that was supplied by Cub Cadet. Relying on the Southern District's opinion in *Textron Financial Corp. v. Trailiner Corp.*, 965 S.W.2d 426, 431–32 (Mo.App.

---

1. Respondents are collectively referred to as "Mopec."

S.D.1998), *motion for rehearing and application for transfer denied,* the trial court held that Cub Cadet's failure to plead proper notice of sale under section 400–9.504(3) RSMo 2000 [2] precluded admission of evidence to prove notice was given. Without this evidence of notice, Cub Cadet could not prove compliance with section 400.9–504(3), so it could not recover a deficiency judgment against Mopec.

Cub Cadet appeals from the trial court's judgment, alleging, among other things, that the holding in *Textron* is wrong, and the trial court erred in barring all recovery due to Cub Cadet's failure to plead notice.[3]

For the following reasons, we affirm.

### Background

The issue on appeal concerns a pleading requirement. Thus, we provide only a brief background below. Additional facts will be included in our discussion of the issue on appeal where necessary.

On April 14, 1994, Cub Cadet and Mopec entered into an agreement under which Cub Cadet agreed to supply an inventory of outdoor power equipment to Mopec, subject to Cub Cadet's security interest in the inventory.[4] The agreement provided that, upon sale of an inventory item, Mopec would remit the item's wholesale price to Cub Cadet.

In August of 1994, Cub Cadet audited its inventory at Mopec and discovered discrepancies. Although the parties attempted to remedy the discrepancies, subsequent audits by Cub Cadet revealed further discrepancies. Thus, Cub Cadet removed its remaining inventory from Mopec's business premises. In November of 1994, Cub Cadet demanded that Mopec pay the balance due, which at the time was approximately $137,000. Cub Cadet's efforts to collect from Mopec were unsuccessful, and it eventually sold the remaining items of inventory that it had taken from Mopec's premises.

Cub Cadet then filed suit against Mopec, in which Cub Cadet sought to recover the money due it. When this case was finally tried to the court on August 30, 2000, it was on Cub Cadet's amended petition, which was filed on the morning of trial. As set forth above, the trial court entered judgment for Mopec. This appeal follows.

### Standard of Review

*Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976) governs our review of this court-tried case. *Commerce Bank, N.A. v. Dooling,* 875 S.W.2d 943, 945 (Mo. App. E.D.1994). We will uphold the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 945–46. We view the evidence and all reasonable inferences therefrom in a light most favorable to the judgment and disregard all contrary evidence. *Id.* at 946.

### Discussion

Cub Cadet's point on appeal concerns the trial court's reliance upon the Southern District's holding in *Textron* as barring recovery of a deficiency judgment because of Cub Cadet's failure to plead notice. Cub Cadet maintains that the *Textron* holding is wrong and should not be followed, "in that neither section 400.9–504 nor the Missouri common law require that

---

**2.** Unless otherwise noted, statutory references are to RSMo 2000.

**3.** The trial court also ruled against Cub Cadet on its fraud claim, but it has not appealed from that portion of the judgment. Thus, we do not address it herein.

**4.** We refer to the inventory interchangeably as "inventory" and "collateral."

notice be pled in order to state a breach of contract/guaranty claim."

■ *Applicability of the UCC*: We first address Cub Cadet's argument in its reply brief that its cause of action is not "a 'deficiency judgment' claim dependent solely on the provisions of the Missouri Commercial Code as the basis for the cause of action." Cub Cadet maintains that its claim "is simply a breach of contract/guaranty action on the underlying agreement entered between them on April 14, 1994.... In Missouri, the elements of a breach of contract action where the existence of the contract is undisputed is breach and damages. This was pled by Cub Cadet." (Citations omitted.) Specifically, Cub Cadet attempts to skirt UCC requirements—in particular, the notice pleading requirements under Article 9, section 400.9–504(3) as interpreted in *Textron*—by classifying its contract cause of action as being "*subject to* not *based upon* the provisions of the Commercial Code." (Cub Cadet's emphasis.) Cub Cadet maintains, without citation to relevant authority, that this is "a relevant distinction in determining whether Cub Cadet was required to plead facts showing compliance with the notice provisions of the Code." The purpose of such a distinction is unclear. If a claim is subject to the UCC,[5] its applicable provisions cannot be avoided. Indeed, the UCC has not completely displaced the common law. Section 400.1–103 states that "*[u]nless displaced by the particular provisions of this chapter,* the principles of law and equity ... shall *supplement* [the Code's] provisions." (Emphasis added.) However, as emphasized, if a provision of the UCC applies that displaces the common law, the common law contrary to that provision cannot apply.

The transaction between the parties is a secured transaction under Article 9 of the UCC. Section 400.9–102 sets forth the relevant scope of Article 9:

(1) Except as otherwise provided in section 400.9–104 on excluded transactions [(not applicable in this case)], this article applies

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel papers, or accounts.

Section 400.9–109(4) specifically defines the inventory that served as the collateral in the parties' secured transaction at issue as a class of "goods" covered under Article 9. Thus, section 400.9–504(3), which applies to Cub Cadet's disposal of the collateral after Mopec's default, is an *applicable* provision. The notice requirements thereunder could not be avoided by reference to the common law.

Moreover, Cub Cadet acknowledges the applicability of section 400.9–504(3) in its argument. It argues that the holding in *Textron* concerning the notice pleading requirements under section 400.9–504(3) is wrong because other states' interpretations of similar, if not identical, sections do not require that notice be pled. It does not argue that *Textron's* holding is inapplicable. In reading the trial transcript, it is clear that at trial Cub Cadet sought recovery of a deficiency on the theory that the contract created a secured transaction governed by Article 9 of the UCC. It cannot now argue its inapplicability. Article 9 of the UCC is applicable to the transaction in

---

5. Chapter 400 of the Missouri Revised Statutes, entitled the "Uniform Commercial Code," shall be referred to herein as the "UCC." Section 400.1–101. Sections 400.9– 101 through 400.9–508, which address secured transactions under the UCC, shall be collectively referred to as "Article 9."

question, and we disagree with Cub Cadet's arguments to the contrary.

■ *Choice of Law*: Cub Cadet also maintains that the contract indicates that because the parties agreed in their contract that Ohio law would apply and Ohio law does not require that notice be pled, we are bound to apply Ohio law. Section 400.1–105 allows that:

when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this chapter applies to transactions bearing an appropriate relation to this state.

We need not reach the application of section 400.1–105, because even assuming, *arguendo*, that section 400.1–105 allows for the application of Ohio law to the issue at hand, Cub Cadet never raised the issue of Ohio law being applicable at the trial level. In *Cohen v. Ozark Airlines, Inc.*, 623 S.W.2d 84, 87 (Mo.App. E.D.1981), plaintiff argued that the trial court should have applied the law of another state in lieu of the law of Missouri. The Eastern District "view[ed] the requirement of Rule 55.21(b) that there be allegations 'which show that the law of another state must be applied' as necessitating some sort of notice in this regard." *Id.* Because Cohen provided no notice to the trial court or the defendant, through pleading or otherwise, of his belief that another state's law applied, the Eastern District concluded that "the [trial] court should not be convicted of error on matters which were not brought to its attention. Plaintiff is not entitled to sit back in silence at the trial court level and pick and choose the law of other jurisdictions on appeal." *Id.* Thus, in accord with

*Cohen,* "[w]ithout mining the depths of conflict laws, we find that the trial court properly applied Missouri law for the simple reason that it was never put on notice by [Cub Cadet] that the law of another state was applicable." *Id.* at 86.

■ *Pleading Requirements Under Section 400.9–504(3)*: As previously mentioned, Cub Cadet filed an amended petition on the day of the trial. Count I of Cub Cadet's amended petition is entitled "Action on a Contract." In summary, Cub Cadet alleged in its amended petition as follows:

Cub Cadet entered into a contract with Mopec under which Mopec would sell Cub Cadet's outdoor power equipment. Mopec granted a security interest to Cub Cadet in the equipment inventory provided by Cub Cadet. The contract was terminated, and Cub Cadet demanded the amount due under the contract from Mopec. The prices of the items provided to Mopec under the contract were reasonable and proper, but Mopec did not pay. Cub Cadet therefore prayed for damages including the amount due under the contract, plus interest, attorney's fees and costs.

At trial, Cub Cadet introduced several items of evidence supporting its claim that Mopec, in violation of the agreement, sold inventory and failed to remit the wholesale amount to Cub Cadet. Cub Cadet also introduced evidence relating to its resultant sale of the collateral upon repossession. When Cub Cadet sought to introduce two notice letters as evidence that it provided reasonable notice of the sale of the collateral to Mopec under section 400.9–504(3), Mopec objected on the grounds that Cub Cadet had not pled notice, so the evidence was beyond the scope of the pleadings.[6] According to the trial

---

6. Despite being apprised of a possible pleading problem, Cub Cadet never moved to

court's findings of fact, it provisionally admitted the exhibits subject to Mopec's objections. Thereafter, Mopec argued, and the trial court agreed, that the holding in *Textron* prohibited admission of the evidence pertaining to notice because Cub Cadet failed to plead notice. Specifically, in its conclusions of law, the trial court held as follows:

[Cub Cadet]'s petition (neither the original petition or the amended petition under which the case was tried) alleged that the "reasonable notice" required to be given a debtor by a creditor seeking a deficiency judgment under the provisions of RSMo 400–9.504(3) had been given. At trial, [Mopec] objected to the admission of Exhibits 13 and 14 which were notices to [Mopec] of the intended sale of the collateral and advising [Mopec] they had until November 30, 1994[,] to pay the indebtedness secured and that after that date, the sale would be held. The Court admitted Exhibits 13 and 14 provisionally over the objections of [Mopec] in the court-tried case to be taken with the case and considered later. It is contended by [Mopec] that under the holding of *Textron Financial Corporation v. Trailiner Corporation*, 965 S.W.2d 426 (Mo.App.1998—motion for transfer denied) where compliance with notice requirements of § 400.9–504(3) is not pled, the creditor is barred from presenting evidence of compliance at trial, and without such evidence, the Plaintiff creditor cannot prevail.

It appears that [Mopec]'s reading of the holding in *Textron* is, in fact, correct. Harsh and inequitable as it may seem, especially where the evidence shows that notice as contemplated by the statute was, in fact, given [Mopec], this court is bound thereby and must conclude that the Exhibits 13 and 14

amend its pleadings to include notice.

were not admissible and should have been excluded and that [Cub Cadet]'s claim for a deficiency judgment must fail.

Again, Cub Cadet does not argue that the trial court incorrectly interpreted *Textron*. Instead, Cub Cadet argues that *Textron's* holding, which resulted in a "judicially created [] affirmative pleading requirement for notice[,] . . . is simply wrong." As discussed below, we disagree.

The facts in *Textron* are quite similar to those in the case now before us. Textron entered into a lease-finance agreement, guaranteed by Trailiner, under which Bobby, an individual who was once a board member of the Trailiner Corporation, financed several trucks. Bobby, in turn, leased the trucks to Trailiner. *Textron*, 965 S.W.2d at 427. Bobby filed for bankruptcy, and Textron sued Trailiner on its guarantee. Textron's Second Amended Petition, filed on the first morning of trial,

[was] without any allegation concerning repossession of the collateral or its sale. Summarized, it merely allege[d] that [Trailiner] breached the Continuing Guarantee by not paying [Textron] the money Bobby owed on the December 30, 1997, lease contract. It also allege[d] that after all credits, Defendant owe[d] Plaintiff $503,179.65 principal. Unspecified interest, collection costs, and attorney fees [were] also sought.

*Id.* at 428. At trial, Textron introduced letters that Textron claimed had given Trailiner proper notice of the sale of the equipment after it was repossessed. *Id.* Trailiner objected to the admission of the letters on the grounds that the notice evidence was beyond the scope of the pleadings. The trial court overruled the objection and admitted the evidence. The jury

found for Textron, and the court entered judgment against Trailiner. *Id.*

On appeal to the Southern District, Trailiner maintained that "[Textron]'s compliance with section 400.9–504(3) was, in essence, an element of its case that [Textron] had to plead and prove." *Id.* at 429. The Southern District first noted that Trailiner was under no obligation "to plead or prove absence of notice as an affirmative defense to recovery of deficiency." *Id.* (citing *Boatmen's Bank of Nevada v. Dahmer*, 716 S.W.2d 876, 879 (Mo. App.1986)). The court next analyzed burden of proof and pleading requirements in a cause of action, including the requirement that "when a cause of action requires proof that a statutorily-created condition precedent was met, the party with the obligation to meet the condition must not only plead compliance, but must prove it affirmatively." *Id.* (Citations omitted.) The court further noted the case of *Anheuser v. Oswald Refractories Co.*, 541 S.W.2d 706, 711 (Mo.App.1976). The court in *Anheuser* held that "where a seller had not *pled* or proved that he gave the statutory notice [under section 400.2–706(3) RSMo 1969], he could not recover the difference between the sale price and the contract price." 541 S.W.2d at 711. *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860 (Mo.App.1978), principally relied upon the *Anheuser* case in first adopting the "No Notice–No Deficiency" rule. After reviewing these cases, the Southern District concluded that "compliance with the notice provisions of § 400.9–504(3)[was] an element of [Textron's] case that it had to *plead* as well as prove." *Textron*, 965 S.W.2d at 429 (emphasis in original). The court found that Textron "pled nothing about a sale of the collateral, or compliance with the notice provisions of § 400.9–504(3), or facts that would allow an inference that conditions precedent for obtaining judgment had been performed."

*Id.* at 430. After denying Textron's remaining arguments, the court held that Textron's exhibits relating to notice:

> were not admissible because none of [Textron's] allegations refer to a sale of collateral, notice of sale of collateral, compliance with notice requirements of § 400.9–504.(3), or any other ultimate fact showing [Textron] was seeking a deficiency judgment. Without [the notice] exhibits, [Textron had] failed to prove compliance with § 400.9–504(3), and [was] therefore not entitled to a deficiency judgment.

*Id.* at 432.

Instead of trying to distinguish *Textron*, Cub Cadet advances several arguments in support of its contention that this court should not follow the holding in *Textron* because "the underlying premise of the absolute bar rule[, as applied by *Textron,*] is flawed and inconsistent with the controlling Missouri statutes in this case." For example, Cub Cadet argues that this court, in *Commercial Credit Equipment Corp. v. Parsons*, 820 S.W.2d 315 (Mo.App. W.D. 1991), criticizes the "absolute bar rule" and instead advocates the application of the "rebuttable presumption rule." Indeed, *Commercial Credit* discusses, at least in *dicta*, the absolute bar rule, the rebuttable presumption rule, and set off under section 400.9–507, as various remedies available to a debtor where secured property has been disposed of in a commercially unreasonable manner. 820 S.W.2d at 324. However, *Commercial Credit's* criticisms of the absolute bar rule and advocacy for the rebuttable presumption rule relate to the application of those rules when the creditor disposes of collateral in a commercially unreasonable manner in violation of section 400.9–504(3) and the secured party's subsequent liability for failure to comply under section 400.9–507. *Id.* Because it found the sale was commercially reason-

able, the court never reached the point of applying any of the rules. Nor does *Commercial Credit* address the application of those rules in the context of the notice requirement under section 400.9–504(3), which is the issue now before us. As pointed out in *Textron,* section 400.9–504(3) "imposes a twofold obligation upon a secured party seeking to recover a deficiency." *Textron,* 965 S.W.2d at 431; *see also Thong v. My River Home Harbour, Inc.,* 3 S.W.3d 373, 377 (Mo.App. E.D.1999) (citing *Textron* in discussing the fact that "commercial reasonableness and notice are distinct requirements"). The first obligation set forth in section 400.9–504(3) concerns notice. A secured party is required to provide notice of a sale of collateral to debtors "so that they may take whatever actions they can to protect their interest," such as discharging the debt and reclaiming the collateral, finding another purchaser, or assuring that any sale by the creditor is done in a commercially reasonable manner. *Textron,* 965 S.W.2d at 431. The second obligation set forth in section 400.9–504(3) concerns commercial reasonableness. A creditor who chooses to sell the collateral must do so in a reasonably commercial manner. This requirement, "is designed to encourage the creditor to seek the most advantageous sale price and thus reduce the possibility and amount of any deficiency." *Id.* Because, "these two requirements, i.e., notice and commercial reasonableness, are separate and distinct elements," the criticisms of the absolute bar rule advanced by this court in *Commercial Credit* as applicable to the commercial reasonableness requirement are not applicable to the failure to plead notice issue in *Textron* and now before us. *Id.*

Cub Cadet also cites this court's opinion in *Victory Hills Ltd. Partnership I v. NationsBank, N.A. (Midwest),* 28 S.W.3d 322 (Mo.App. W.D.2000), in support of its argument that the rebuttable presumption rule should have been applied by the trial court rather than the absolute bar rule applied in *Textron.* Its reliance on *Victory Hills* is misplaced. *Victory Hills* explicitly distinguishes the issue involved therein from the issue now before us by holding that the "no notice-no deficiency" rule "[had] no application on the undisputed facts of the case," because collateral remained to satisfy the debt and the creditor had not filed an action seeking a deficiency judgment. 28 S.W.3d at 332. Nonetheless, *Victory Hills* cites to *Textron,* in *dicta,* by noting that "in a deficiency judgment action, the creditor is required to *plead and prove* that he or she has complied with the notice provision of § 400.9–504(3)." *Id.* at 330 (emphasis added) (citing *Textron,* 965 S.W.2d at 429).

We agree with the trial court that *Textron* is applicable to the nearly indistinguishable facts now before us. Cub Cadet's pleadings do vary from those in *Textron* by alleging the commercial reasonableness of their private sale of the inventory, thereby allowing an inference that section 400.9–504(3) applied. However, Cub Cadet's pleadings do not contain ultimate facts or allegations to demonstrate that it had provided the requisite notice under section 400.9–504(3) to Mopec. *Textron,* 965 S.W.2d at 430. There is no dispute that Mopec received the two notice letters announcing the sale of November 30, 1994, but the issue now before us relates strictly to Cub Cadet's failure to plead that proper notice under section 400.9–504(3) was given. Under *Textron,* that failure precludes Cub Cadet's recovery of a deficiency judgment. *Id.* at 431–32.

■ *Legislative Intent:* In response to Cub Cadet's arguments, Mopec cites the enactment of Senate Bill (S.B.) 288, 91st Gen. Assemb., 1st Reg. Sess. (Mo.2001),

West's No. 79. Senate Bill 288—approved June 29, 2001, and effective July 1, 2001—revises Missouri's UCC in accordance with the 1998 Uniform Revised UCC. Section 400.9–626 of the new UCC, which according to subsection (c) becomes applicable on or after January 1, 2003, effectively changes the pleading and proof requirements of its predecessor section 400.9–504(3) by specifically stating in subsection (a)(1) that, in actions arising from transactions other than consumer transactions, "[a] secured party need not prove compliance with the provisions of this part relating to collection, enforcement, disposition, or acceptance unless the debtor or a secondary obligor places the secured party's compliance in issue." West's No. 79, p. 405. Thus, it has statutorily eliminated the notice pleading requirement as found in *Textron,* unless and until a debtor makes compliance an issue. In addition, S.B. 288 eliminates the "no notice-no deficiency rule" in section 400.9–626(a)(3).[7]

The parties dispute the significance of our legislature's recent enactment of Senate Bill 288. *Mopec maintains that "to the extent that [S.B. 288] relates to issues of pleading and proof of § 400.9–504(3)'s notice of sale requirements, it presumptively changes them." (Mopec's emphasis.) Cub Cadet, on the other hand, argues that the legislature's enactment of section 400.9–626 cannot be used to reasonably infer "that in doing so, the Missouri legislature was acknowledging the existence of a rule of law established by the Southern District

holding in *Textron.*" Cub Cadet insists that "[a] more logical inference would be that to the extent it gave existing case decisions consideration the legislature intended to resolve a conflict existing at the Missouri appellate court level." We disagree with Cub Cadet's argument. First, we perceive no conflict at the Missouri appellate court level concerning the pleading requirement set forth in *Textron.* Second, as discussed below, the principles of statutory construction indicate that Mopec's argument is better reasoned.

■■■■ We borrow from the Missouri Supreme Court's explanation of analyzing a statutory change in accordance with the well-established rules of statutory construction:

> Fundamentally, we seek to ascertain the intent of the lawmakers and to give effect to that intent. A court normally accomplishes this task by attributing to the words used in the statute their plain and ordinary meaning. Legislative intent and the meaning of words used in the statute also can be derived from the general purposes of the legislative enactment. Further insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of enactment. An amended statute ... should be construed on the theory that the legislature intended to accomplish a substantive change in the law. Finally, "all provi-

---

7. Specifically, S.B. 288, section 400.9–626(a)(3), West's No. 79, § A, p. 405, provides as follows:

> (3) Except as otherwise provided in section 400.9–628, if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited

to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:

(A) The proceeds of the collection, enforcement, disposition, or acceptance; or

(B) The amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance.

sions of a statute must be harmonized and every word, clause, sentence, and section thereof must be given some meaning."

*Sermchief v. Gonzales,* 660 S.W.2d 683, 688–89 (Mo. banc 1983) (citations omitted). Likewise:

"In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by the state appellate courts, and that in amending a statute or in enacting a new one on the same subject, it is ordinarily the intent of the legislature to effect some change in the existing law. If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act."

*Kilbane v. Dir. of Dep't of Revenue,* 544 S.W.2d 9, 11 (Mo. banc 1976) (quoting *Gross v. Merchants–Produce Bank,* 390 S.W.2d 591, 597 (Mo.App.1965) (citations omitted)). Thus, in enacting S.B. 288, specifically section 400.9–626, the legislature can be presumed to be aware of the Southern District's interpretation of section 400.9–504(3) in *Textron,* and we may infer its intent to eliminate the notice-pleading requirement set forth in *Textron.* Until the legislative change becomes effective on January 1, 2003, the notice pleading and proof requirements in *Textron* remain valid law.

Again, we do not disagree with the holding in *Textron* or the trial court's application of its notice-pleading requirement to the facts at issue. Despite the "harsh and inequitable" result of applying *Textron* noted by the trial court, the law relating to pleading requirements in seeking a deficiency judgment under section 400.9–504(3) was valid when Cub Cadet filed its amended petition. The trial court correctly concluded that Cub Cadet was required

to plead notice, and its failure to do so precluded admission of Exhibits 13 and 14 thereby causing Cub Cadet's claim for a deficiency judgment to fail.

### Conclusion

The trial court did not err in holding that Cub Cadet's exhibits relating to notice under section 400.9–504(3) were not admissible, and, therefore, its claim for a deficiency judgment under that section should fail. Thus, we affirm the judgment.

ELLIS, P.J., and EDWIN H. SMITH, J., concur.