IOS CAPITAL, INC., Appellant,

v.

**Art JACOBI and Virginia Jacobi, Respondents.**

No. WD 61847.

Missouri Court of Appeals, Western District.

May 30, 2003.

**910**

Thomas G. Berndsen, Clayton, MO, for appellant.

Lawrence R. McClure, Marshall, MO, for respondents.

Before HOWARD, P.J., and ULRICH and HARDWICK, JJ.

VICTOR C. HOWARD, Presiding Judge.

IOS Capital, Inc., appeals from the trial court's judgment in favor of Art and Virginia Jacobi in a case involving a dispute over a lease of office equipment. IOS raises two points on appeal. First, it contends that because the Jacobis were operating their business as partners, the trial court erred in determining that Art Jacobi was not obligated under the lease agreement. Second, IOS contends the trial court erred in entering judgment in favor of the Jacobis because there was not an accord and satisfaction of the lease agreement.

We reverse and remand.

### Facts

Art and Virginia Jacobi are married. Since 1995, they have owned and operated the "South 65 Storage" business in Marshall, Missouri. The Jacobis divide the workload of the business between themselves, with Virginia Jacobi doing the paperwork and office work and with Art Jacobi doing the "physical stuff." No one else works in the business.

On March 6, 1996, Art and Virginia Jacobi both signed under oath and filed with the Missouri Secretary of State a Registration of Fictitious Name form acknowledging that both of them were doing business as South 65 Storage. The registration form identifies Art and Virginia Jacobi as owning one hundred percent of the business.

On June 28, 2000, South 65 Storage entered into a written lease agreement with IOS Capital, Inc., for the lease of a photocopy machine, a facsimile machine, and some related accessories and equipment. IOS is a wholly owned subsidiary of IKON Office Solutions, Inc., and provides financing to its customers. The lease re-

quired sixty monthly payments of $253. The "Full Legal Name" of the lessee identified on the lease agreement is "South 65 Storage," which is identical to the name the Jacobis registered with the Missouri Secretary of State. The lease agreement was executed by Virginia Jacobi as the "Office Manager" for South 65 Storage. The agreement was not signed by Art Jacobi. The Jacobis jointly owned the real estate where the storage business was located.

The Jacobis made only thirteen of the required monthly payments before defaulting on the lease agreement. The lease payments were made from a checking account in the name of "AMJO Infrared Dryers, Inc." AMJO Infrared Dryers, Inc.'s address as indicated on its checks is the same address as South 65 Storage, as identified on the lease agreement. The checks for the lease payments were signed by either Art Jacobi or his brother, or by both of them.

On July 18, 2001, IOS sent a letter to South 65 Storage, stating that its most recent lease payment was past due.

On August 30, 2001, Virginia Jacobi sent a letter to IOS asking it to cancel the lease agreement and to pick up the photocopy machine. In her letter, Jacobi acknowledged that the machine "is still in excellent condition and is a wonderful machine," but that they were "just not able to continue to make the monthly payments." Jacobi further wrote, "I want to make sure the machine is returned to you." The Jacobis' other company, AMJO, was going out of business, so they wanted to cancel the lease agreement. Virginia Jacobi testified that no one from IOS or IKON Office Solutions ever told her that they would agree to cancel the lease.

On September 6, 2001, IKON picked up the leased office equipment from the Jacobis' place of business. The Delivery and Acceptance receipt specifically states that "p/u [pick-up] of equipment does not release customer of contractual obligation."

On September 7, 2001, IOS wrote back and informed the Jacobis that the lease was in default, that it was accelerating the remaining payments, and that the Jacobis would remain contractually obligated for the accelerated balance. When Virginia Jacobi subsequently contacted Stephen Young at IOS, he did not tell her that the lease would be cancelled. He told her only that "he would try to work something out."

The lease agreement provides that upon default, IOS can recover the accelerated balance of the unpaid lease payments discounted at six percent, along with late charges of five percent and any attorneys' fees incurred in enforcing the lease. The accelerated balance of the forty-seven unpaid lease payments discounted at six percent is $10,573.68. Together with interest, late charges, and attorneys' fees, IOS's damages are $17,423.91.

IOS sued the Jacobis for breach of the lease. The trial court found that IOS failed to prove that Art Jacobi was a party to or otherwise obligated under the lease agreement, and the parties reached an accord and satisfaction whereby IOS agreed to cancel the lease agreement in exchange for the Jacobis returning the leased equipment. Accordingly, the court entered judgment in favor of the Jacobis and denied IOS any relief under its petition. This appeal follows.

### Standard of Review

■■■■ "Our review of a court-tried civil case is governed by *Murphy v. Carron*[, 536 S.W.2d 30 (Mo.1976)]. We must affirm the judgment of the trial court unless there is no substantial evidence to support it; it is against the weight of the evidence; or, it erroneously declares or applies the

law." *Manfield v. Auditorium Bar & Grill, Inc.,* 965 S.W.2d 262, 266 (Mo.App. W.D.1998) (citation omitted). "We view the evidence and all reasonable inferences therefrom in a light most favorable to the judgment and disregard all contrary evidence." *Cub Cadet Corp. v. Mopec, Inc.,* 78 S.W.3d 205, 208 (Mo.App. W.D.2002).

### Point I

IOS's first point on appeal is that the trial court erred in determining that Art Jacobi was not obligated on the lease agreement in that the Jacobis were both obligated under the lease agreement because they were doing business as partners and Art Jacobi gave his wife apparent authority to bind him and ratified her actions.

IOS's petition alleged that Art and Virginia Jacobi "are individuals ... doing business as South 65 Storage." The petition sought judgment against the Jacobis jointly and severally. In their answer, the Jacobis stated as follows:

> Defendant Art Jacobi and Defendant Virginia Jacobi affirmatively further state that they are husband and wife, and as husband and wife and as tenants by the entireties, as the single entity of their tenancy by the entireties, were doing business as South 65 Storage; that South 65 Storage is a duly registered fictitious name of Art and Virginia Jacobi as the single entity of their tenancy by the entireties; and that Art Jacobi individually and Virginia Jacobi, individually, were not doing business as South 65 Storage.

> Defendant Art Jacobi and Defendant Virginia Jacobi affirmatively further state that the Lease Agreement referred to in Plaintiff's Petition was not executed by Defendant Art Jacobi and Defendant Virginia Jacobi as tenants by the entireties, and is not the contractual obligation of Defendant Art Jacobi and Defendant Virginia Jacobi as tenants by the entireties doing business as South 65 Storage.

\*   \*   \*   \*   \*   \*

The trial court found that IOS failed to prove that Art Jacobi was a party to or otherwise obligated under the lease agreement.

■ IOS frames the issue here as whether Art and Virginia Jacobi were doing business as partners under the name South 65 Storage. However, as discussed below, we find that the Jacobis are jointly and severally liable to IOS under the lease agreement regardless of whether they were operating the business as partners. Therefore, we decline to address whether the evidence was sufficient to prove that the Jacobis were partners.

On March 6, 1996, Art and Virginia Jacobi filed a Registration of Fictitious Name with the Missouri Secretary of State. They registered the name "South 65 Storage." Art and Virginia Jacobi are named as the owners on a single line, and their ownership percentage is listed as one hundred percent. Art and Virginia Jacobi both signed the registration.

Section 417.210.2 RSMo 2000 provides as follows:

> If the interest of any owner of a business conducted under a fictitious name registered as provided in this section is such that such owner may claim not to be jointly and severally liable to third parties with respect to debts and obligations incurred by such business, the registration relating to such business shall reflect the respective exact ownership interests of each owner of such business. In the case of any other business registered as provided in this section, disclosure of the respective exact ownership interests shall be optional.

This statute indicates that if the Jacobis intended to claim they were not jointly and severally liable to third parties with respect to South 65 Storage's debts and obligations, they should have delineated their exact individual ownership interests in the registration of fictitious name. They did not do so; rather, they listed their names on a single line and listed their ownership percentage on the same line as one hundred percent. It is undisputed that Art Jacobi was an owner of South 65 Storage when the lease was signed. Furthermore, the evidence is clear that South 65 Storage is the customer in the lease agreement and that Virginia Jacobi signed the agreement on behalf of South 65 Storage. Thus, the lease is an obligation incurred by South 65 Storage. We conclude that under § 417.210.2, Art Jacobi may not now claim he is not jointly and severally liable to IOS under the lease agreement. The trial court erred in determining that Art Jacobi was not obligated under the lease agreement. Point I is granted.

## Point II

IOS's second point on appeal is that the trial court erred in entering judgment in favor of the Jacobis because there was not an accord and satisfaction of the lease agreement in that IOS did not agree to accept the return of the leased equipment in exchange for cancellation of the lease.

In *Dixon v. Brannan*, 970 S.W.2d 384, 385–86 (Mo.App. E.D.1998), the eastern district stated as follows:

"An accord and satisfaction is an agreement between parties to give and accept something different from that claimed by virtue of the original obligation." In order for there to be an accord and satisfaction, the contract elements of offer, acceptance, and consideration must all be present.... [A] bona fide dispute or an unliquidated claim supports an accord and satisfaction.

"An accord and satisfaction is a contract for the settlement of a *disputed or unliquidated claim* for an amount less than that claimed by the creditor." *Cranor v. Jones Co.,* 921 S.W.2d 76, 81 (Mo.App. E.D.1996) (quoting *Henderson v. Eagle Express Company,* 483 S.W.2d 767, 768 (Mo.App. 1972)). (Emphasis added.) "A claim that is neither unliquidated nor in dispute ... requires other consideration to support an accord and satisfaction." *Ensminger v. Burton,* 805 S.W.2d 207, 217 (Mo.App. W.D.1991).

The trial court interpreted the August 30, 2001, letter from Virginia Jacobi to IOS as "offering the voluntary return of the leased photocopy equipment to [IOS] in return for cancellation of the lease agreement." The trial court determined that IOS "accepted the terms" of the letter by picking up the equipment on September 6, 2001, without advising the Jacobis that it was reserving and not releasing them from any terms under the lease agreement. The court further found that IOS picking up the equipment in response to the "offer" by Virginia Jacobi to voluntarily return the equipment in return for cancellation of the lease agreement resulted in an accord and satisfaction releasing the Jacobis from further obligations under the contract. Last, the court concluded that the Jacobis would not have voluntarily returned the equipment to IOS on September 6, 2001, if IOS had advised them that the lease agreement was not cancelled, and it would be inequitable and unconscionable under these facts to allow IOS the damages it was seeking against the Jacobis after the equipment had been returned to it.

We agree with the trial court that the August 30, 2001, letter from Virginia Jacobi to IOS asking that the lease be

gement constituted an offer.  However, we disagree that IOS accepted the terms of the offer by picking up the equipment on September 6, 2001, without advising the Jacobis that it was not releasing them from any terms under the lease agreement.  The Jacobis were in default for failing to make a lease payment.  The agreement specifically states that the business was not entitled to notice of default and that upon default, the business was not entitled to notice prior to IOS repossessing the equipment.[1]  Therefore, by picking up the equipment after default by South 65 Storage, IOS was not accepting the terms of a new offer by Virginia Jacobi; rather, it was doing what it was already entitled to do under the contract.  IOS's lack of acceptance of Virginia Jacobi's offer is further evidenced by its September 7, 2001, letter to South 65 Storage indicating that South 65 Storage remained contractually obligated for its "accrued invoice and accelerated contractual obligation."  Virginia Jacobi herself testified that nobody from IOS ever told her the lease was cancelled. Therefore, because the essential element of acceptance was not present, there was no accord and satisfaction in this case.  Point II is granted.

1.  The terms and conditions of the lease agreement provide that "THIS LEASE IS ... NON–CANCELABLE."

 The personal guaranty section of the lease agreement provides, in relevant part, as follows:

 In consideration of IOS Capital's entering into the above Agreement, I unconditionally guarantee that the Customer will make all payments and pay all other charges required under such Agreement when they are due.... I agree that IOS Capital need not notify me of any default under the Agreement and may proceed directly against me without first proceeding against the Customer or the Equipment, in which event, I will pay all amounts due under the terms of the Agreement.

The judgment of the trial court is reversed and remanded with directions to enter judgment in favor of IOS against Art and Virginia Jacobi.

ULRICH and HARDWICK, JJ., concur.

In the section pertaining to default, the agreement provides, in relevant part, as follows:
 IF YOU DO NOT PAY ANY AMOUNT WHEN IT IS DUE ... YOU ARE IN DEFAULT.... We are entitled to all past due payments and we may accelerate and require you to immediately pay us the future payments due under the Lease present valued at the discount rate of 6% to the date of default plus the present value of our anticipated value of the equipment at the end of the term of this Agreement.  We may repossess the Equipment and pursue you for any deficiency balance after disposing the Equipment, all to the extent permitted by law.  You waive the rights you may have to notice before we seize any of the Equipment.